[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has taken this appeal from the denial by the zoning board of appeals of the town of Mansfield of his appeal to the board of a cease and desist order issued by the zoning enforcement officer based on his conclusion that the plaintiff was CT Page 10013 in violation of the town's zoning regulation pertaining to boarding houses which limits the number of unrelated residents of a dwelling in a residential zone to no more than four persons.
Prior to the briefing by the plaintiff of the issues on this appeal, he filed an "Objection to Record on Appeal" (File item 105) in which he sought to exclude certain documents in the record relating to the zoning enforcement officer's investigation on the ground that the board "had an obligation to review the actions of the Zoning Enforcement Officer at the time he issued the cease anddesist order [and that any] subsequent actions are not relevant to the Appeal at hand." The plaintiff's objection was overruled by the court based on the standard of review stated in Caserta v.Zoning Board of Appeals, 226 Conn. 80, 87-91, which held that the zoning board of appeals holds a de novo hearing on an appeal taken under General Statutes § 8-7 from a decision of the zoning enforcement officer, and the court reviews the decision of the zoning board of appeals based on the record before the board, and not on the ruling or record of the zoning enforcement officer.
The plaintiff's initial brief attacked the zoning regulation on various constitutional grounds including that of "impermissible vagueness" and devoted one section of his argument (pp. 20-22) to the claim that the definition of "boarding house" in the zoning ordinance is "unconstitutional in that there is no rational basis to exclude it from a PAR 40/MF Zone." At the time of the hearing on the plaintiff's objection to the record on appeal, the court directed counsel's attention to the cases of Village of Belle Terrev. Boraas, 416 U.S. 1 (1974) and Elliott v. City of Athens Georgia,960 F.2d 975, 980-81 (11th Cir. 1992) which rejected claims that similarly worded ordinances violated the due process and equal protection clauses of the federal constitution, as well as Dinan v.Board of Zoning Appeal, 220 Conn. 61, which sustained the validity of such ordinances under the due process and equal protection clauses of the state constitution.
Thereafter, the plaintiff filed a supplemental brief in which he acknowledged that the Caserta standard of review precluded him from pursuing his previous claim that the board should not have considered the additional information obtained subsequent to the cease and desist order. The only remaining claims pursued in his brief were that the zoning regulation was "void for vagueness" and that there was insufficient evidence in the record before the board to support its action. CT Page 10014
The right to appeal from a decision of a zoning board of appeals is predicated on a showing by the appellant that he is aggrieved because he has a personal and legal interest in the subject matter of the decision and that his property rights have been specially and injuriously affected by the board's action.Tucker v. Zoning Board of Appeals, 151 Conn. 510, 514. Under the circumstances of this case the plaintiff has established that he is the owner of the property that the zoning board of appeals found to be in violation of the zoning regulations and the court finds that he has proved his aggrievement for the purpose of this appeal from the board's decision.
The cease and desist order which was appealed to the zoning board of appeals and upheld by the board after two hearings held on January 13, 1993 and February 10, 1993, was issued by Curt B. Hirsch, the town's zoning enforcement officer, in the form of a letter dated October 27, 1992. It stated (Record item 1) that there was "clear and undisputable evidence that the single-family residence at 316 Hunting Lodge Rd. is still being used as a boarding house in violation of the Regulations" and of a prior settlement agreement with the town which the plaintiff executed in consideration of the withdrawal by the town of an enforcement action which it filed in this court on May 17, 1991, relating to the same property based on a cease and desist order issued by Hirsch against the plaintiff on April 18, 1991.
The court has taken judicial notice of the prior enforcement proceeding, namely, Curt B. Hirsch v. John Mihalopolous and HelenMihalopolous, Docket No. CV 91 47574, the third count of which alleged that the defendants were utilizing the dwelling at 316 Hunting Lodge Road as a boarding house in violation of Section IV. B.4. of the zoning regulations which defines a "Boarding House" as "[a] private residence in which more than three persons either individually or as families are housed or lodged for hire with or without meals." In their answer, the defendants denied that the property was being used as a boarding house in violation of the regulation and also asserted two special defenses which alleged that the boarding house regulation was unconstitutional on its face and as applied under the due process and equal protection clauses of the federal and state constitutions.
The court file reflects the fact that the complaint in the prior action was withdrawn on February 10, 1992 and Record item 7 in the plaintiff's present appeal is a letter to the town's attorney dated February 7, 1992, signed by the attorney who CT Page 10015 represented the plaintiff at that time, which states the terms and conditions imposed by the town as a condition of the withdrawal of the suit to enforce the 1991 cease and desist order. It states that "[i]t is acknowledged that at the time the complaint was issued the rentals were in violation of the Mansfield Zoning Regulations [and that] Mr. Mihalopolous has since reduced the number of tenants in the properties in question and agrees that hereafter he will be in compliance with the regulations."
The agreement also requires the plaintiff to include a notice to the tenants in his leases in bold print advising them that the zoning regulations limit the number of unrelated residents of a dwelling to no more than four persons and that a violation will be grounds for eviction. It also requires the plaintiff to provide the town with a copy of the new lease forms and to register the names of all new tenants with the zoning enforcement officers on an annual basis.
On January 4, 1993, the zoning enforcement officer sent the zoning board of appeals a summary of the results of his investigation of the alleged new violation which led him to conclude that the cease and desist order was justified. Record item 12. He stated that he had inspected the subject premises three times in October of 1992 and found that "the same 6 or 7 vehicles were present at a time of day that would indicate that they were there all night long", that four of the vehicles were registered to the tenants who had signed the lease and that he had received a signed, notarized statement (Record item 9) from those persons, namely Danny Ma, Larry Migdol, Ruben Akerman and Pedram Hendizadeh, stating that they "are the only residents of the house and are not subleasing or providing residence to anyone else."
He concluded by stating that the owner and the tenants "can show compliance by demonstrating that the additional 3 vehicles are used by persons who reside at another address", and that if they were unable to do so he would consider the leased premises to be in violation of the boarding house regulation. He also requested that the hearing be continued in the event the board was "inclined to give the owner and tenants the benefit of the doubt based on the notarized statement" so that he could request the registered owners of the vehicles to appear before the board.
At the first hearing held on January 13, 1993, Ruben Akerman, the only one of the four tenants named in the lease who was called by the plaintiff to testify on his behalf, stated that the three CT Page 10016 cars not owned by the tenants belonged to non-resident commuter students who sometimes slept overnight and then went to classes by bus and who also left their vehicles overnight outside the house because of the restrictive requirements for parking cars on the campus. Akerman also acknowledged that one of the three students whose status had been questioned, Quan Tran, was actually "house sitting right now" at the subject premises because it "has a history of break-ins [and] is unguarded, unprotected." Record item 6, p. 11.
At the conclusion of the hearing, the board continued the matter to another date in order to obtain more information about the persons whose vehicles were observed parked on the premises. The chairman also noted that the board "might want to talk to these individuals as well, now that we know who they are . . . ", (Id. 17) and another member stated that "[w]e may wish to get further information on just how often they are staying there." Id.
Counsel for the plaintiff responded to Hirsch's request for the addresses of the owners of the three vehicles whose names were Jung Park, Quang Tran and Eric Levine (Record item 14), and Hirsch then sent letters to the parents of Tran and Park (Record items 15 and 16) stating that their's son's vehicle was seen parked on "many occasions" on the plaintiff's premises at 6:00 a.m., that the plaintiff claimed that he commuted to classes from home, and that they should indicate whether he was or was not residing primarily at his parents' home. Tran's parents replied in the affirmative and Park's parents responded that their son was not residing primarily at their home during the 1992 fall semester.
On February 3, 1993 the plaintiff's attorney was informed by letter (Record item 13) from the clerk of the board that the continued hearing was scheduled for February 10, 1993. The clerk's letter stated that the "Chairman, Martin D. Fox, requests that the three individuals mentioned in your letter . . . namely Jung Park, Quang Tran and Eric Levine, attend the hearing to testify."
At the commencement of the second hearing on February 10, 1993, counsel for the plaintiff stated that although he had attempted to comply with the board's request to have one or more of the students present to testify, he had "no authority" to compel their attendance and that it was not "our burden to bring those people forward, anyway." Record item 6, p. 19. He also stated that it was his belief that the board had the obligation to consider the evidence that Hirsch had at the time that he issued CT Page 10017 the cease and desist order and "not something he gathered after the fact." Id.
The board members noted in the course of the discussion that Tran, who was supposedly living at his parents' home in East Hartford, was reported by Akerman to have been "house sitting" at 316 Hunting Lodge Road during the spring recess when the first hearing was held. Id. 24. Counsel for the plaintiff was also asked by the board to explain the fact that no statements were obtained from any of the three students in lieu of their actual testimony at the hearing, and was also asked about his failure to have Akerman present for questioning by the board "to ascertain where the truth lies in this case." Id. 26-27.
Prior to the board's denial of the appeal, the members commented on the failure of the plaintiff to call witnesses he would naturally be expected to call and stated that their absence was a significant factor in their decision. The reason stated for upholding the action of the zoning enforcement officer was that he had presented sufficient evidence to confirm that there was "a reasonable question as to the number of people occupying the house . . . ". Id. 32-33.
Section 826 of the General Statutes provides that appeals from decisions or orders made by a zoning enforcement officer may be taken to the zoning board of appeals. In Caserta v. Zoning Boardof Appeals, supra, 87, the Supreme Court held that the zoning board hears and decides such appeals de novo, and that "the proper focus of a reviewing court is on the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision."
It is the board's responsibility in the course of the statutorily required hearing to find the facts and to apply the pertinent zoning regulations to those facts. Id. 90. When an appeal is taken from the board pursuant to General Statutes § 8-8, the reviewing court, by reason of the de novo nature of the board's consideration of the issues decided by the zoning enforcement officer, "must focus on the decision of the board and `the record before it, because it is that decision and record that are the subject of the appeal under § 8-8." Id. 91.
The court is restricted on such an appeal to a determination of whether the board's conclusions were reasonably supported by the record and it may not substitute its judgment for that of the CT Page 10018 board. Horn v. Zoning Board of Appeals, 18 Conn. App. 674. It is exclusively the board's function to weigh the evidence and to determine the credibility of the witnesses and the court goes beyond the scope of its judicial review when it weighs the evidence and independently undertakes to decide an issue of fact. Mobil OilCorporation v. Zoning Board of Appeals, 35 Conn. App. 204.
The court's examination of the record before the board when it made its decision, as summarized earlier in this opinion, based upon the board's de novo review of the zoning enforcement officer's order, indicates that the claims of law made by the plaintiff on this appeal are being advanced in order to obtain a judicial reversal of the board's conclusion as the trier of fact in this case that more than four persons were "housed" within the meaning of the zoning regulations in the plaintiff's building. More particularly, he asks the court in effect to evaluate the credibility of the testimony of Akerman, the only witness that he chose to call upon to testify for him at the hearing, and he also seeks to have the court disregard or reject the inferences drawn by the board from the circumstantial evidence produced by its own further investigation as well as the negative inferences that the board could reasonably draw from the plaintiff's failure to call any of the other tenants as witnesses or to offer the testimony of the sworn statements of the "commuting" students who were persons the plaintiff would have naturally been expected to call as witnesses at the hearing, or if they were unable to attend, to at least corroborate Akerman's testimony by way of affidavits.
The only other issue raised by the plaintiff in his supplemental brief and in oral argument that appears to be directed to the validity of the regulation itself, as opposed to the sufficiency of the evidence to support an administrative finding that the regulation was violated, is that it does not furnish "sufficient guidelines to objectively determine if a building is being used as a `Boarding House'" However, the fact that the plaintiff had an adequate opportunity to contest a prior enforcement action based on the same facts and circumstances and chose not to pursue his defense to the action, precludes him from advancing the same claims in a later proceeding against him;Carothers v. Capozziello, 215 Conn. 82, 94-96; and in view of his voluntary acknowledgment of the prior violation he can hardly claim that he had inadequate notice of what was prohibited. SeeConnecticut Building Wrecking Co. v. Carothers, 218 Conn. 580,590-92. CT Page 10019
For the foregoing reasons, the court finds that the board's de novo determination that a violation existed is reasonably supported by the record and that it furnished a sufficient basis for upholding the cease and desist order issued by the zoning enforcement officer. See Horn v. Zoning Board of Appeals, supra, 677.
Accordingly, the plaintiff's appeal is dismissed.
Hammer, J.