I. N. MORGAN, APPELLANT, v. STATE OF NEBRASKA ET AL.,
APPELLEES.

51 N. W. 2d 382

Filed February 1, 1952.   No. 33091.

*Denney & Denney,* and *Perry & Perry,* for appellant.

*Clarence S. Beck,* Attorney General, *Walter E. Nolte,* and *Homer L. Kyle,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant, an osteopathic physician and surgeon, made

application for a license to operate a hospital owned by him in Steele City, Nebraska, as an incident to and in connection with his practice of osteopathy. The Director of Health held a hearing and denied the application for the single reason that the hospital of appellant did not satisfy the standard of the Department of Health of the State of Nebraska that any person admitted to a licensed hospital must be under the care of a person licensed to practice medicine and surgery in Nebraska. An appeal was prosecuted by appellant to the district court for Lancaster County, trial was had, a finding made that the hospital of the applicant "does not comply with the state law and the standards and requirements for operation of a hospital," and a judgment was entered dismissing the application.

There is no issue of fact in this case. Appellant is and has been since 1931 a licensed and practicing osteopathic physician and surgeon of Nebraska. He owned, maintained, and operated a hospital in Steele City from 1935 until 1948 as an incident of and in connection with his practice of osteopathy. He applied for a license to operate his hospital for the year 1948, and a license therefor was granted and issued to him. His application for a license to operate the hospital for the year 1951 was denied, but he was granted and issued a license to operate a maternity home or hospital during that year.

Appellant has at all times limited his practice and services to the things he is authorized and licensed to do as an osteopath. The fact he operated a hospital until the license to do so was denied him did not in any way affect the scope or field of his practice. He conducted himself properly and ethically as an osteopath strictly within the authority and limitations of his license. Any person at or who came to the hospital and required or desired the services of a regular physician and surgeon was furnished or permitted to have one. There has never been any person licensed to practice

medicine and surgery in Nebraska interested in or connected with the hospital of appellant or who has had charge of anyone who was admitted to it as a patient of appellant.

The Legislature of 1947 adopted an act relating to licensing, inspecting, and regulating hospitals. Laws 1947, c. 231, p. 727; §§ 71-2017 to 71-2030, R. R. S. 1943. The declared purpose was to establish and enforce basic standards for the care of persons in institutions which rendered nursing care and to provide for and insure safe and adequate care of persons in such institutions. It made it unlawful after January 1, 1948, for anyone to maintain and operate facilities for the care of two or more nonrelated persons suffering from illness, injury, or deformity, or where obstetrical or other care was rendered for a period of more than one day, without obtaining a license to do so as provided by the act.

The Department of Health was required to issue licenses for the operation of institutions subject to the act which were found to comply therewith and with "such regulations as are lawfully promulgated by said department." It was required to deny or revoke any license issued for violation of the act or any rules and regulations lawfully promulgated pursuant to it; for permitting, aiding, or abetting the commission of any unlawful act; or for: "Conduct or practices detrimental to the health or safety of patients and employees of said institution; Provided, that this provision shall not be construed to have any reference to healing practices authorized by law." § 71-2023, R. R. S. 1943.

The Department of Health, with the advice of the Hospital Advisory Council created by the act, was required to adopt, promulgate, and enforce standards for different types of hospitals and related institutions to be licensed, and was empowered to modify, amend, and rescind any standard adopted. The Department of Health acted, and in April 1950, adopted standards. Under the subhead of "Medical Attendance" in section VIII A 1,

of the standards adopted by the department, is the following: "All persons admitted to any institution covered by these standards must be under the care of a person licensed to practice medicine and surgery in Nebraska."

The appellant has not complied with and does not intend to satisfy the requirement of this standard. If it is valid and enforceable as construed by the Department of Health, the denial of the application of appellant was correct. Otherwise, it should have been granted and a license issued to him to operate a hospital as an incident of and in connection with his practice of osteopathy as a place to care for his patients who desired or required hospitalization.

The Department of Health, for administering the act referred to, has classified hospitals as "General Hospital" and "Specialized Hospital (i.e., orthopedic, contagious, etc.)." The standard quoted above is applicable to either class of hospitals recognized by the department. It requires any person admitted to either to be under the care of a person authorized to practice medicine and surgery in Nebraska. A duly licensed osteopath, under the rules promulgated by the Department of Health, cannot have and operate a hospital facility for the care of persons suffering from sickness, injury, or deformity who are legally and properly his patients. He may render osteopathic healing practices and services in his office or in their homes, or at any other place in Nebraska except in a hospital. For an osteopath to have a patient in a hospital in Nebraska, the Department of Health demands that the patient be cared for while there by a regularly licensed physician and surgeon. In fact, the literal terms of the standard are that at the very time a person is admitted to a hospital he must then be under the care of a regular physician and surgeon.

Appellant has been, during the time important to this case, authorized to practice osteopathy in all its branches as taught in recognized osteopathic colleges,

which "consists of a system of manipulation of the limbs and body of the patient * * * by kneading, rubbing or pressing upon the parts of the body without the aid of medicine or operative surgery"; to perform surgery as it is taught and used as a part of the osteopathic system of healing, which in the main is by manipulation and does not enter the general field of operative surgery with surgical instruments; and to practice obstetrics and use anesthetics. State ex rel. Johnson v. Wagner, 139 Neb. 471, 297 N. W. 906. Otherwise stated, the license of appellant as an osteopathic physician and surgeon authorized him to treat human ills by means of manipulative therapy as distinguished from the treatment of such ills through the use of drugs and surgery by regular physicians and surgeons.

Appellant performs professional services for persons who have suffered sprains, fractures, and injuries which do not require operative surgery; for persons afflicted with chronic heart disorders, rheumatism, and maternity cases; and persons with other ills and conditions that can properly be cared for by an osteopath. Many of his patients desire and require hospitalization. He is unable to secure a license to furnish it to them, except maternity cases. His patients cannot enter any other hospital unless they place themselves under the care of a regular physician and surgeon. The realistic view, therefore, is that an osteopath cannot have a patient in a Nebraska hospital unless the patient is a maternity case. He is thereby restricted and deprived of an advantage and right to which he is entitled by and as an incident of the authority granted to him by the state to practice osteopathy. The standard adopted by the Department of Health is unreasonable and capricious, is an unreasonable exercise of the police power, and violates constitutional prohibitions. It has no real and substantial relation to public health or any other subject important to public welfare. The requirement of the standard bears no relation to the sanitary conditions

or the adequacy of the equipment of the hospital; no relation to the training, competence, or qualification of the personnel, or to the manner of the operation of the physical plant of the hospital; and no relation to the public health, morals, welfare, or security. It may not be asserted that the ability of an osteopath is affected by the fact that his patient is or is not admitted to and cared for in a hospital, or that the quality of the care furnished his patient would be improved by interference of a physician and surgeon while the care was being furnished.

Appellees refer to decisions sustaining regulations prohibiting osteopathic physicians and surgeons from practicing in hospitals. Cases of this character, and they are numerous, verify the extent and frequency of the exclusion of osteopaths from the use of hospitals owned and operated by others, including municipalities and public corporations. If the osteopath may be also excluded by rule such as the one here involved, from having and using a hospital owned by him for the care of his patients, the restriction becomes complete prohibition. These cases also indicate the serious character of the lack of harmony and agreement between the regulars and the osteopaths concerning healing practices, and the practical impossibility of any patient of an osteopath being admitted to a hospital if he is required to place himself under the care of a physician and surgeon as a condition of his admittance.

Any standard adopted by the Department of Health must meet constitutional requirements, must not be oppressive, arbitrary, or discriminatory, nor disregard substantial property rights. The practice of osteopathy is recognized and authorized by law. §§ 71-1,137 to 71-1,141, R. R. S. 1943. It is constituted a lawful occupation in the public interest, and as such is entitled to protection against unlawful restrictions and interference. It may not be arbitrarily limited or discriminated against, and its advocates may lawfully erect and operate build-

ings and facilities for the treatment, according to its tenets, of patients seeking its aid, subject to lawful and reasonable limitations and regulations under the police power. The limitations and regulations imposed must bear relation to the public health or welfare. The practice of appellant as an osteopath is his business, it is a property right, and as such entitled to protection against unlawful restrictions and interference. A state, or an agency of it, may not, under the guise of protecting the public, arbitrarily interfere with private business, prohibit lawful occupations, or impose unreasonable or unnecessary restrictions upon them. To grant appellant the authority to practice osteopathy and then deny him the right to have the use of a recognized and useful facility for the care of his patients, except upon condition that he surrender the care of them to a physician and surgeon, is to take away much of the value and importance of the grant made. Spears Hospital v. State Board, 122 Colo. 147, 220 P. 2d 872; Liggett Co. v. Baldridge, 278 U. S. 105, 73 L. Ed. 204, 49 S. Ct. 57; Mugler v. Kansas, 123 U. S. 623, 31 L. Ed. 205, 8 S. Ct. 273; San Diego T. Assn. v. East San Diego, 186 Cal. 252, 200 P. 393, 17 A. L. R. 513; Ex parte Whitwell, 98 Cal. 73, 32 P. 870, 35 Am. S. R. 152, 19 L. R. A. 727. See, also, Blackledge v. Farmers Independent Telephone Co., 105 Neb. 713, 181 N. W. 709, 16 A. L. R. 343.

The solution of the problem of this case suggested by appellees is their claim that the standard provides only that a licenced physician and surgeon "be on the staff of every licensed general hospital" and that the regulation does not prevent any osteopath from practicing in a general licensed hospital. The plain, unmistakable language of the standard is that all persons admitted to any hospital subject to the standard must be under the care of a person licensed to practice medicine and surgery in Nebraska. It contains not a word about anyone being "on the staff" of any hospital. Lan-

guage of such obvious and conclusive meaning needs no argument and will admit of no interpretation. An osteopath may have a patient in a licensed hospital, but if he does, the patient must be under the care, not of an osteopath, but "of a person licensed to practice medicine and surgery in Nebraska." This substantially prohibits an osteopath from having a patient in such a hospital.

Appellees also assert that the object and purpose of the standard is that "every general hospital should be staffed and equipped to meet any and every emergency * * *." If this is the correct appraisal of the standard in question, it could be fairly maintained, especially by the advocates of the merits of osteopathy, that every licensed hospital must have an osteopathic physician and surgeon on its staff. The hospital of appellant complied with every requirement for the license sought. It was refused solely because of the failure of the patients admitted to be cared for by a physician and surgeon. In other words, the application was refused because the patients admitted to the hospital of appellant were his patients and were cared for by him, and he was an osteopath. This standard is completely silent on the subject of how a hospital shall be staffed. It does not require that anyone authorized to practice any system of the healing art shall be on the staff of a hospital licensed by the department. This contention is wholly without substance or merit.

The record wholly fails to show any reason why the application of appellant should not have been granted and a license issued to him to operate his hospital.

The judgment should be, and it is reversed and this cause is remanded to the district court for Lancaster County, with directions to render a judgment directing and requiring the appellees, on application of appellant, to grant and issue to him a license to maintain and operate the hospital owned by him in Steele City, Nebraska, as it was maintained and operated by him at the time

the application for a hospital license was made which is involved in this case, and that all costs herein be taxed to appellees.

REVERSED AND REMANDED WITH DIRECTIONS.