STATE OF NEBRASKA EX REL. DEPARTMENT OF HEALTH OF THE
STATE OF NEBRASKA, APPELLEE, V. DALE JEFFREY, APPELLANT.
525 N.W.2d 193

Filed December 30, 1994.   No. S-93-742.

James A. Cada for appellant.

Don Stenberg, Attorney General, and Sam Grimminger for appellee.

Gregory M. Dennis and Edward E. Embree II, of Perry, Hamill & Fillmore; Harold W. Hannah; and James F. Wilson III for amicus curiae American Veterinary Medical Law Association.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WHITE, J.

Dale Jeffrey appeals from an order of the district court for Lancaster County enjoining him from engaging in the business of equine dentistry. The district court held that equine dentistry was an integral part of the practice of veterinary medicine and that as an unlicensed person, Jeffrey was properly enjoined.

As the constitutionality of a statute was raised in the district court and on appeal, the case was docketed in the Supreme Court.

Jeffrey assigns six errors: (1) The State did not prove that he was engaged in the practice of veterinary medicine; (2) the court erred in not finding that equine dentistry is exempt from regulation by the Department of Health under Neb. Rev. Stat. § 71-1,155(6) (Reissue 1990); (3) and (4) the court erred in not finding Neb. Rev. Stat. § 71-1,154 (Reissue 1990) and

§ 71-1,155 unconstitutional; (5) the court erred in issuing a permanent injunction, as the Nebraska Veterinary Practice Act does not provide for such a remedy; and (6) the order of the district court is vague and does not adequately define the conduct enjoined. We will discuss the errors in order.

The evidence discloses that equine dentistry consists of the examination and treatment of horses' mouths, including the cutting, filing, and extraction of teeth. Prior to the injunction issued by the district court, Jeffrey had been practicing equine dentistry full time for 9 or more years. He is not licensed to practice veterinary medicine.

On September 18, 1990, Peggy Thorp asked Jeffrey to examine Ebby, her thoroughbred mare. Thorp suspected that Ebby had hooks on her back molars. Jeffrey examined Ebby's mouth, concluded that there were hooks on the lower back molars, and removed them. Jeffrey also floated the horse's molars; that is, he cut the upper front molars with a tool that Thorp said resembled a bolt cutter. Thorp testified that Ebby bled profusely from the mouth during the procedure. Jeffrey told Thorp the bleeding would cease shortly.

Ebby's mouth continued bleeding after Thorp took Ebby home. Jeffrey examined the horse 2 days after the procedure, but could not ascertain the cause of the bleeding. Thorp asked Dr. Charles Van Patten, a licensed veterinarian, to examine the horse. Dr. Van Patten found lacerations and a quarter-sized hole on Ebby's tongue. Upon Dr. Van Patten's recommendation, and after various unsuccessful treatment procedures, Thorp took Ebby to the veterinary college at Kansas State University for treatment. Thereafter, the State brought this action against Jeffrey, successfully seeking an injunction preventing him from practicing equine dentistry.

As to the first error assigned, § 71-1,155 provides that "[n]o person may practice veterinary medicine and surgery in the state who is not a licensed veterinarian or the holder of a valid temporary license issued by the board." The statute then lists a series of exceptions, one of which is relevant and shall be discussed later.

Section 71-1,154(2) states that veterinary medicine "shall include veterinary surgery, obstetrics, *dentistry*, and all other

branches or specialties of veterinary medicine." (Emphasis supplied.) Section 71,1,154(3)(a) states that the practice of veterinary medicine shall mean "[t]o diagnose, treat, correct, change, relieve, or prevent animal disease, deformity, defect, injury, or other physical or mental conditions . . . ."

In equity actions such as this, an appellate court reviews the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994). See, also, *Metropolitan Life Ins. Co. v. Kissinger Farms*, 244 Neb. 620, 508 N.W.2d 568 (1993). With the relevant sections of the Nebraska Veterinary Practice Act listed above in mind, we review Jeffrey's conduct as presented in the record to ascertain whether Jeffrey was indeed practicing veterinary medicine.

Jeffrey admits that he practiced equine dentistry, but claims that practicing equine dentistry is somehow different than practicing dentistry under § 72-1,155 or that it falls under an exception to that statute. Jeffrey testified at trial that while practicing equine dentistry, he examines the entire mouth and diagnoses the condition of the cheeks, gums, and tongue, in addition to diagnosing possible problems with a horse's teeth. He also testified that he does "just about everything that's needed done inside a horse's mouth." Jeffrey testified that he floats and removes teeth, trims and buffs teeth, and works on incisors. Jeffrey also testified that he can change the condition of the horse's mouth by "balanc[ing] the overall mouth of the horse for performance and function." Jeffrey admitted at trial that a lay equine dentist cannot do all of the dental work required for proper treatment of a horse.

When asked if he had ever severed a palatine artery, which is an artery running through a horse's tongue, Jeffrey responded that he had and that he considered himself just as qualified as a veterinarian to treat a severed palatine artery. However, Jeffrey then testified that he did not know what the complications of a severed palatine artery could be, if any. No veterinarian was present during the few times that Jeffrey had severed the artery, so he treated the severed artery himself by placing a pressure pack on the tongue to stop the bleeding.

Section 71-1,154(2) provides that veterinary medicine shall include dentistry. When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain a statute's meaning. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992). Given its ordinary meaning, dentistry, as used in § 71-1,154(2), includes procedures performed in an animal's mouth. The statute does not distinguish equine dentistry from canine, feline, bovine, or any other kind of dentistry. To hold otherwise would result in providing exceptions where there plainly are none.

Judging from the testimony on the record regarding Jeffrey's conduct, it is clear that Jeffrey was indeed practicing dentistry without being licensed as a veterinarian. By his own admission, Jeffrey diagnoses possible problems with and changes in the conditions of a horse's mouth. The filing, cutting, removing, trimming, and buffing of a horse's teeth, as well as diagnosing cheek, gum, and tongue conditions, clearly indicate that Jeffrey treats, corrects, and relieves defects, deformities, injuries, or other physical conditions when practicing equine dentistry.

According to § 71-1,155, one must be a licensed veterinarian to perform such tasks, and Jeffrey is not a licensed veterinarian. Jeffrey's proficiency at practicing equine dentistry is irrelevant. This court is only concerned with whether Jeffrey violated § 71-1,155 by practicing dentistry without a license, and we find that he has. There is ample evidence on the record that Jeffrey violated § 71-1,155, and therefore Jeffrey's first assignment of error has no merit.

Jeffrey argues in his second assignment of error that the trial court erred in finding that equine dentistry does not fall within the sixth exception to § 71-1,155. Section 71-1,155(6) provides that the Nebraska Veterinary Practice Act shall not be construed to prohibit

> [a]n owner of livestock or a bona fide farm or ranch employee from performing any act of vaccination, surgery, pregnancy testing, or the administration of drugs in the treatment of domestic animals under his or her custody or ownership nor the exchange of services between persons or bona fide employees who are principally farm or ranch operators or employees in the performance of these acts.

This exception allows owners or bona fide farm or ranch employees to perform the services listed in the statute when the animal is under their control or custody. Jeffrey argues that this exception applies to him because he owns livestock and his clients relinquish custody of their horses to him while he practices equine dentistry.

We disagree with Jeffrey's reading of the statute. Section 71-1,155(6) applies to owners or bona fide farm or ranch employees who work on their *own* animals, not another person's animals, unless an exchange of services is involved. Jeffrey practices equine dentistry in exchange for money, not services. Furthermore, nothing in the record indicates that he is a bona fide farm or ranch employee. Thus, Jeffrey does not fall under the owner or employee exception to § 71-1,155. Jeffrey argues that if an owner or employee is allowed to provide such services to their own animals, then an owner should be able, under the statute, to designate Jeffrey to provide the same services. Horse owners who wish to employ Jeffrey's services cannot circumvent § 71-1,155 by giving Jeffrey permission to practice dentistry on their horses. We find Jeffrey's second assignment of error meritless, as his conduct does not fall under § 71-1,155(6).

We now turn to Jeffrey's third and fourth assignments of error. Jeffrey claims that §§ 71-1,154 and 71-1,155 violate the Due Process and Equal Protection Clauses of the Nebraska and U.S. Constitutions and are therefore invalid. Jeffrey claims that the statutes are overbroad, are vague, deny due process without a rational basis, and have a classification system that bears no rational relation to a legitimate state purpose. Whether a statute is constitutional is a question of law; accordingly, the Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *Howard v. City of Lincoln*, 243 Neb. 5, 497 N.W.2d 53 (1993).

We will first address Jeffrey's allegations that (1) the statutes in question deny Jeffrey substantive due process without a rational basis and (2) the statutes violate the Equal Protection Clause.

In order to have standing to challenge the constitutionality of a statute under either the state or federal Constitution, the

challenger must be one who is, or is about to be, adversely affected by the statutory language in question and must show that as a consequence of the alleged constitutional violation, the challenger is deprived of a protected right. *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991); *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991); *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990).

There is no doubt that Jeffrey is adversely affected by the statutory language in question; the Legislature has imposed licensing regulations upon his occupation. We have previously held that the right to conduct a lawful business or occupation is a constitutionally protected right. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). See, also, *Gillette Dairy, Inc. v. Nebraska Dairy Products Board*, 192 Neb. 89, 219 N.W.2d 214 (1974); *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960); *Morgan v. State*, 155 Neb. 247, 51 N.W.2d 382 (1952). The practice of dentistry on animals is indeed a lawful business or occupation, but one must be licensed by the State to engage in that occupation. It is this licensing regulation that Jeffrey challenges as unconstitutional. Jeffrey's right to practice his occupation is a constitutionally protected right, and thus, Jeffrey has standing to question the constitutionality of §§ 71-1,154 and 71-1,155. Whether Jeffrey has standing to challenge the overbreadth and vagueness of the statutes in question will be discussed below.

Jeffrey argues that §§ 71-1,154 and 71-1,155 infringe upon his substantive due process right to practice his equine dentistry business and are unconstitutional. The extent of the State's power to regulate business is set forth in *Gillette Dairy, Inc., supra*, where the court stated that

[w]hether a business is charged with such a public interest as to warrant its regulation is a legislative question in which the courts ordinarily will not interfere. The Legislature may not, however, under the guise of regulation, impose conditions which are unreasonable, arbitrary, discriminatory, or confiscatory. Such regulations must be reasonable considering the nature of the business and not such as would prevent the carrying on of the business.

192 Neb. at 96-97, 219 N.W.2d at 219-20. The court further stated that " '[a] citizen clearly has the right to engage in any occupation not detrimental to the public health, safety, and welfare. Measures adopted by the Legislature to protect the public health and secure the public safety and welfare must have some reasonable relation to those proposed ends. . . .' " *Id.* at 97, 219 N.W.2d at 220. The question before this court is whether the State's licensing regulations regarding the practice of veterinary medicine generally, and dentistry in particular, bear a rational relation to legitimate State interests.

The board of examiners of veterinary medicine issues licenses to veterinarians. The purpose of regulating the practice of veterinary medicine, through the board of examiners, is found in Neb. Rev. Stat. § 71-1,152.01 (Reissue 1990). That section states that the purpose of the board which licenses veterinarians is to provide for the health, safety, and welfare of Nebraska citizens; to ensure minimum standards of proficiency and competency; to ensure that the students who attend veterinary school are qualified to serve the public in a safe and efficient manner; and to protect consumer interests. The licensing regulations are in place to protect the public from persons who do not have the minimum standards of proficiency or are unqualified to practice veterinary medicine. The licensing regulations also provide for the health, safety, and welfare of Nebraska citizens, as well as protect consumer interests.

Dentistry is an invasive practice. As Jeffrey himself testified, improper dental care can result in major digestive tract disorders. Complications may arise during a dentistry procedure that require extensive training to treat. The State deems it advisable that persons who practice dentistry on animals be competent enough to fully treat complications that may arise. In this case, we will not interfere with the Legislature's decision that veterinary medicine is of such a public interest that it warrants regulation by the State. See *Gillette Dairy, Inc., supra.* Licensing a person to ensure quality and complete, proficient dental care of an animal is clearly a rational means to the legitimate State purpose of protecting Nebraska animal owners, as well as animals themselves. We therefore hold that the State's licensing requirements are rationally related to a legitimate State

interest, and we find that Jeffrey's substantive due process challenge is meritless.

Jeffrey next argues that the exemption scheme set forth in § 71-1,155 does not apply uniformly to persons of the same class who are similarly situated, thus violating the Equal Protection Clauses of the Nebraska and U.S. Constitutions. Jeffrey claims that while persons who treat domestic chickens, turkeys, or waterfowl and persons who dehorn or castrate livestock are exempted from the licensing requirements, equine dentists are not, and that classification system is unreasonable. He argues that dehorning, castration, and equine dentistry are substantially similar and require similar treatment under the licensing regulations. We disagree.

In an equal protection challenge, when a fundamental right or suspect classification is not involved in legislation, the legislative act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose. *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991). The case before us does not involve a fundamental right or suspect classification, so the question is whether the classification scheme set forth in § 71-1,155 is rationally related to a legitimate state purpose. Jeffrey concedes that the purpose of the licensing requirements for veterinary medicine is to protect the public. The purpose for creating a board to license veterinarians is detailed in § 71-1,152.01, as discussed above, and shall not be repeated here. The State's purpose for creating licensing requirements is to protect the health, safety, and welfare of Nebraskans and their animals, as well as to protect consumer interests. The question then becomes whether the classification system found in the exemptions to § 71-1,155 is rationally related to that purpose.

Dehorning and castration are not similar to dentistry, as Jeffrey suggests. Dentistry involves much more invasive procedures, as discussed above. Equine dentists are not in the same class as those exempted from the licensing statute because dentistry can have a much more profound impact on an animal's health. For this reason it is entirely rational not to exempt equine dentists from licensing regulations. The exemptions found in § 71-1,155 do treat uniformly those persons in the

same class who are similarly situated. We find that the State's purpose of protecting the public from unlicensed persons practicing veterinary medicine, specifically equine dentistry, is indeed legitimate, and the exemption scheme is rationally related to that purpose.

Jeffrey also claims that §§ 71-1,154 and 71-1,155 are unconstitutionally vague and overbroad, and are thus void. As we noted in *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987), a vagueness challenge is conceptually distinct from an overbreadth challenge. An overbroad statute need lack neither clarity nor precision, and a vague statute need not reach constitutionally protected conduct. *Id.* A vagueness challenge questions the clarity of the statutory language. *Two IGT Video Poker Games, supra.* To have standing to challenge a statute for vagueness, one must not have engaged in conduct which is clearly proscribed by the statute and cannot complain of the vagueness of the law as applied to the conduct of others. *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993); *State v. Pierson*, 239 Neb. 350, 476 N.W.2d 544 (1991); *Midwest Messenger Assn. v. Spire*, 223 Neb. 748, 393 N.W.2d 438 (1986). We have found that Jeffrey was clearly practicing equine dentistry, and therefore practicing veterinary medicine, without a license. He was engaged in conduct which was clearly proscribed by § 71-1,155. On that basis, Jeffrey has no standing to challenge the vagueness of §§ 71-1,154 and 71-1,155.

Irrespective of standing to challenge a statute for vagueness, Jeffrey may have standing to assert that the statute in question is overbroad if the statute reaches a substantial amount of constitutionally protected conduct. See *Copple, supra.* An attack on the overbreadth of a statute asserts that language in the statute impermissibly infringes on a constitutionally protected right. *Two IGT Video Poker Games, supra.* In determining whether Jeffrey has standing to challenge the statute as overbroad, we must first determine whether the statute reaches a substantial amount of constitutionally protected conduct. See *Copple, supra.* We have already decided that the right to engage in a lawful business or occupation is a constitutionally protected right. Thus, § 71-1,155, which regulates the practice of veterinary medicine, does reach a substantial amount of

constitutionally protected conduct, and Jeffrey does have standing to challenge it for overbreadth.

A statute may be unconstitutionally overbroad only if its overbreadth is substantial, that is, when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable. *Two IGT Video Poker Games, supra*. Jeffrey argues that § 71-1,154(3), which defines veterinary medicine, when read together with § 71-1,155, is overbroad because it encompasses a broad range of activities outside the practice of veterinary medicine for which licensing is neither necessary nor appropriate. Jeffrey argues that the statute does not define what activities are included within veterinary dentistry and that equine dentistry is not, and should not be, included. We disagree.

As we stated earlier, given its plain and ordinary meaning, dentistry, as used in § 71-1,154(2), includes procedures performed in an animal's mouth. The statute does not distinguish equine dentistry from any other kind of dentistry. The exemptions found in § 71-1,155 sufficiently narrow the applicability of the licensing regulations, and since equine dentistry is not among the exemptions, it is prohibited. The veterinary medicine procedures for which one needs a license are not overbroad, for they include treatment procedures that may be invasive and detrimental to an animal's health if not performed properly. Dentistry is included among the procedures for which one needs a license; the exceptions or limitations to this are found in the statute itself, and they do not include equine dentistry. Because the exemptions make the statute sufficiently narrow, Jeffrey's contention that equine dentistry should be exempted is a matter for the Legislature, not this court. We find §§ 71-1,154 and 71-1,155 not overbroad, as they are not unconstitutional in a substantial portion of the situations to which they are applicable. Jeffrey's contention that the statutes in question are overbroad is meritless.

Jeffrey claims in his fifth assignment of error that the district court erred in permanently enjoining Jeffrey from practicing equine dentistry because the issuance of an injunction is an inappropriate remedy. The Uniform Licensing Law provides that "[a]ny person engaging in the practice of any profession,

for which a license is required by the Uniform Licensing Law, without such license may be restrained by temporary and permanent injunctions." Neb. Rev. Stat. § 71-164 (Reissue 1990). The Nebraska Veterinary Practice Act is a subpart of the Uniform Licensing Law. See Neb. Rev. Stat. § 71-101 (Reissue 1990). Thus, Jeffrey may be enjoined by a temporary or permanent injunction if he engages in the practice of veterinary medicine without a license, as such a license is required under § 71-1,155.

An injunction is properly used for the protection of public rights, property, or welfare. *State ex rel. Meyer v. Weiner*, 190 Neb. 30, 205 N.W.2d 649 (1973). Obviously, the Legislature enacted the Uniform Licensing Law, and specifically the Nebraska Veterinary Practice Act, to provide for the health, safety, and welfare of the citizens of Nebraska and in the interest of consumer protection, as is stated in § 71-1,152.01. An injunction in this case prohibits Jeffrey from injuring animals and protects consumers who wish to obtain proper dental care for their horses from a licensed veterinarian who knows the complications of injury that may occur during the filing and cutting of a horse's teeth. An injunction is proper, as it protects the welfare of Nebraska horse owners. We hold that the issuance of an injunction was the proper remedy in this case.

Jeffrey claims in his sixth assignment of error that the district court's order is too vague and fails to specify a standard against which Jeffrey can gauge his conduct. The order defines veterinary medicine, defines equine dentistry, and prohibits Jeffrey from practicing either. Jeffrey need only look to the order and to the statutes regulating animal dentistry to find a standard by which to measure his conduct. Jeffrey is prohibited from practicing equine dentistry by statute and by order of the district court. The order and the statutes provide guidance to Jeffrey, and as such, his sixth assignment of error is meritless.

Having found that none of Jeffrey's assignments of error have merit, we affirm the order of the district court.

AFFIRMED.