STATE OF NEBRASKA, APPELLEE, V. TODD C. CARPENTER,
APPELLANT.

551 N.W.2d 518

Filed June 28, 1996.   No. S-95-967.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Todd C. Carpenter was found guilty by the district court for Lancaster County of two counts of transferring a motor vehicle without stating the actual mileage to the best of his knowledge and belief, pursuant to Neb. Rev. Stat. § 60-2303 (Reissue 1988). The court also found Carpenter guilty of one count of knowingly causing an odometer of a motor vehicle to be changed to reflect a mileage different from what had actually been driven, pursuant to Neb. Rev. Stat. § 60-2301 (Reissue 1988). The district court sentenced Carpenter to 3 years' probation. Carpenter appeals the district court's decision. We determine that § 60-2303 is unconstitutionally

vague and thus reverse Carpenter's convictions under that section. However, we determine that § 60-2301 is constitutional and that there was sufficient evidence to sustain Carpenter's conviction under that section. We therefore affirm in part, and in part reverse.

## I. BACKGROUND

Carpenter Motors, Inc., is a Nebraska corporation in the business of selling used motor vehicles. Its principal place of business is located in Lincoln, Nebraska. Carpenter is the secretary/treasurer, vice president, and employee of Carpenter Motors. As such, Carpenter's duties include selling vehicles and purchasing vehicles for resale.

### 1. COUNT I

In July 1991, Carpenter Motors purchased through the Metro Auto Auction in the Kansas City, Missouri, area a 1989 Ford Taurus from the D.L. Peterson Trust Company. The buyer's copy of the "Title Warranty and Bill of Sale" listed the mileage on the odometer as 23,048. In a separate space on that document was written, "AS IS" and "Over Mech Limits." Carpenter's signature appears on the "buyer's signature" line. The odometer disclosure statement from the D.L. Peterson Trust Company was not received into evidence.

Later that month, Timothy Haakenstad purchased the 1989 Ford Taurus from Carpenter Motors. Haakenstad testified that at the time he purchased the vehicle, the odometer displayed approximately 24,000 miles. Haakenstad further testified that Carpenter told him that the vehicle had been a rental or leased vehicle, that the renter or lessee felt there was a discrepancy in the mileage, that it appeared to be a low-mileage car, and that it is customary for rental companies to get rid of their vehicles between 40,000 to 60,000 miles.

When the sale was consummated, Carpenter Motors provided Haakenstad with an odometer disclosure statement as required by Nebraska law. These statements are on a form prescribed by the Nebraska Department of Motor Vehicles that state in pertinent part:

I state that the odometer now reads _____ . . .
miles and to the best of my knowledge reflects the actual

mileage of the vehicle described herein, unless one of the following statements is checked.

    ☐    (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

    ☐    (2) I hereby certify that the odometer is NOT the actual mileage. WARNING - ODOMETER DIS-CREPANCY.

This form was signed by Ramona Hyde, an employee of Carpenter Motors, on behalf of Carpenter Motors. It stated that "the odometer now reads 23048 . . . miles," and the second box was checked to indicate this mileage was not the actual mileage. At trial, Hyde testified that it was standard procedure for Carpenter to inform her which box, if any, to check for each car she sold. The first box, indicating that the odometer had exceeded its mechanical limits, was not checked.

## 2. COUNT II

In July 1991, Carpenter Motors purchased through the Metro Auto Auction in Kansas City a 1988 Ford Taurus from Premier Leasing Company. The buyer's copy of the "Title Warranty and Bill of Sale" listed the mileage on the odometer as 7,460. In a separate space on that document was written "As is" and "Over Mech Limits." Carpenter's signature appears on the "buyer's signature" line.

The odometer disclosure statement provided by Premier Leasing also indicated that "the odometer . . . now reads 7460 . . . miles." The box on that form designated **"Warning - Odometer Discrepancy"** was checked, indicating that the reading was not the actual mileage. The box for certifying that the "odometer reading reflects the amount of mileage in excess of its mechanical limits" was not checked. Carpenter's signature appears on the line designated "Transferee's Signature - Buyer."

In August 1991, Scott Johnson purchased the 1988 Ford Taurus from Carpenter Motors. Johnson testified that at the time he purchased the vehicle, the odometer displayed approximately 7,000 miles and that he asked Carpenter whether the

vehicle had exceeded the 100,000-mile mechanical limit on its odometer. Johnson testified that Carpenter told him that it had not. Johnson further testified that Carpenter stated that the original odometer had been broken and replaced, that the 7,000 miles had been registered on the replacement odometer, and that the broken odometer read about 50,000 miles when it was replaced.

Carpenter Motors provided Johnson with an odometer disclosure statement which indicated the mileage on the odometer to be 7,460. The second box warning that the indicated mileage was not the true mileage was checked. The first box, certifying that to the best of the transferor's knowledge the odometer reading reflects the amount of mileage in excess of the odometer's mechanical limits, was not checked. Carpenter's signature appears on the "transferor's signature" line.

### 3. FACTS AS TO GOOD FAITH DEFENSE: COUNTS I AND II

Carpenter testified that he called the Nebraska Motor Vehicle Industry Licensing Board sometime in 1990 to ascertain the proper method for filling out odometer disclosure statements in situations where the odometer in a vehicle had exceeded its mechanical limit and was not otherwise accurate. Corrine Fiel, an investigator for the Nebraska Motor Vehicle Industry Licensing Board, testified that she recalled Carpenter calling her sometime in 1990 with this inquiry. She advised Carpenter that she would have to discuss the matter with Bill Edwards, the director of the Nebraska Motor Vehicle Industry Licensing Board, to get a ruling.

After having spoken with Edwards, Fiel relayed Edwards' advice to Carpenter: that he should check only one box—the second one indicating an odometer discrepancy. Carpenter testified that based on this advice, whenever it had been brought to his attention that Carpenter Motors received a vehicle in which there was any indication of a problem registering miles, Carpenter Motors would check the second box on the odometer disclosure statement warning that the indicated mileage was not the actual mileage.

## 4. COUNT III

In June 1990, Stephen Dunn purchased a 1984 Mazda RX7 from Carpenter Motors. Dunn test drove the vehicle approximately 2 or 3 months before he purchased it. Dunn testified that at the time he purchased the vehicle, its odometer registered approximately 86,000 miles.

Patrick Bell testified that he was the owner of and did business as Bell Auto Repair. Bell further testified that he had business dealings with Carpenter and was a second cousin of his. According to Bell's business records, on or about June 8, 1990, someone on behalf of Carpenter Motors delivered the 1984 Mazda RX7 to Bell Auto Repair for repair of the vehicle's odometer. The method of repair was to install a used instrument cluster (speedometer, odometer, gauges, et cetera) which was provided by Carpenter Motors. Bell testified he could not remember who made the request for the repair or who brought the instrument cluster in to be installed.

Bell Auto Repair's order forms indicate that at the time the vehicle was delivered to them for repair, the indicated mileage on the odometer was 140,685. The in-house copy of this form indicates that the mileage on the installed replacement odometer was 86,238. The record reflects and the trial court found that Carpenter's signature appears on both the in-house copy and the customer copy of the repair order.

The odometer disclosure statement given to Dunn by Carpenter Motors upon closure of the sale certified an odometer reading of 86,367. The second box was checked, warning that the indicated mileage was not the actual mileage. The first box warning that the odometer had exceeded its mechanical limit was not checked. Dunn testified that at the closing, he overheard Carpenter instruct Hyde to "check box number two, that the odometer was not working and that it wasn't accurate at that point and that it was possible that it even had over a 100,000 miles on it." Dunn further testified that there were no stickers relating to the odometer reading affixed to the dashboard, inside doors, or any other place on the car.

Carpenter was charged only under the odometer disclosure statutes and not with fraud or theft by deception. The district court found Carpenter guilty of two counts of transferring a

motor vehicle without stating the actual mileage to the best of his knowledge and belief, pursuant to § 60-2303, and one count of knowingly causing an odometer of a motor vehicle to be changed to reflect a mileage different from what had actually been driven, pursuant to § 60-2301. The court sentenced Carpenter to three years' probation. Carpenter appeals the district court's decision.

## II. ASSIGNMENTS OF ERROR

Carpenter alleges that the district court erred in failing to find (1) that the provisions of Neb. Rev. Stat. § 60-2302 (Reissue 1988) and §§ 60-2301 and 60-2303 are unconstitutionally vague and/or overbroad as applied, (2) that intent to deceive is statutorily and constitutionally an essential element of §§ 60-2301, 60-2302, and 60-2303, punishable under Neb. Rev. Stat. § 60-2307 (Reissue 1988), (3) that there was insufficient evidence to sustain the convictions, and (4) that he was entitled to an affirmative defense based upon his good faith reliance upon advice from the Nebraska Motor Vehicle Industry Licensing Board with respect to the manner of compliance with the provisions of § 60-2303, and that (5) the district court failed to make adequate findings of fact and conclusions of law.

## III. STANDARD OF REVIEW

In determining whether evidence is sufficient to sustain a conviction in a bench trial, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994).

A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Masters, supra; State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994).

While in a bench trial of a criminal case the court's findings have the effect of a verdict and will not be set aside unless clearly erroneous, an appellate court has an obligation to reach

an independent, correct conclusion regarding questions of law. *State v. Kunath, supra*; *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993).

The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by the trial court. *State v. Bainbridge*, 249 Neb. 260, 543 N.W.2d 154 (1996); *State v. Jones*, 248 Neb. 117, 532 N.W.2d 293 (1995).

The burden to clearly demonstrate that a statute is unconstitutional rests upon the party making the claim of unconstitutionality. *Id.* A statute will be presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Id.* A penal statute must be construed so as to meet constitutional requirements if such can reasonably be done. *Id.*

## IV. ANALYSIS

### 1. COUNTS I AND II (§ 60-2303)

In counts I and II, Carpenter was charged with and convicted of violating § 60-2303, which states in pertinent part:

> The transferor of any motor vehicle of an age of less than twenty-five years, which was equipped with an odometer by the manufacturer, shall provide to the buyer a statement signed by the transferor. Such statement shall . . . (3) if the transferor has knowledge that the mileage shown on the odometer is not that actually driven, *state the actual mileage to the best of the transferor's knowledge and belief.*

(Emphasis supplied.)

Section 60-2303 must be read in conjunction with Neb. Rev. Stat. § 60-2304 (Reissue 1988). Section 60-2304 states in pertinent part: "The statement required by section 60-2303 *shall* be on a form prescribed by the Department of Motor Vehicles." (Emphasis supplied.) As stated, the form prescribed by the Department of Motor Vehicles contains a blank line designated for the transferor to state the mileage as it appears on the odometer at the time of transfer. If the transferor has knowledge that "the mileage shown on the odometer is not that

actually .driven," the only options provided to him or her by the form are to check the applicable boxes, which state:

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is **NOT** the actual mileage. **WARNING - ODOMETER DISCREPANCY**.

### (a) Vagueness/Overbreadth

Carpenter first alleges the district court erred in failing to find that § 60-2303 is unconstitutionally vague and/or over-broad as applied. A vagueness challenge to a statute is conceptually distinct from an overbreadth challenge. *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). An overbroad statute need lack neither clarity nor precision, and a vague statute need not reach constitutionally protected conduct. *Id*. As a general rule, in a challenge to the overbreadth and vagueness of a law, the court's first task is to analyze overbreadth. *Id*.

### (i) Standing

An attack on the overbreadth of a statute asserts that language in the statute impermissibly infringes on a constitutionally protected right. *Id*. In determining whether standing exists for a challenge to a statute as overbroad, a court must first determine whether the statute reaches a substantial amount of constitutionally protected conduct. *Id*. If the statutory proscription does not reach a substantial amount of constitutionally protected conduct, there is no standing to challenge a statute on the basis the statute is overbroad, and such challenge must fail. *State v. Copple, supra*; *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985). We determine that filling out an odometer disclosure statement, as required by § 60-2303, does not reach a substantial amount of constitutionally protected conduct. As a result, Carpenter does not have standing to challenge § 60-2303 for overbreadth.

Irrespective of standing to challenge § 60-2303 for overbreadth, Carpenter may have standing to challenge it for

vagueness. To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others. *State ex rel. Dept. of Health v. Jeffrey, supra*; *State v. Walton*, 246 Neb. 893, 523 N.W.2d 699 (1994). Under the facts of this case, we determine that Carpenter was not engaging in conduct clearly proscribed by § 60-2303 when he checked the second box instead of the first box on the odometer disclosure statement forms. Furthermore, we determine that Carpenter is alleging that § 60-2303 is vague as applied to his conduct and not the conduct of others. As a result, we conclude that Carpenter has standing to challenge § 60-2303 for vagueness.

### (ii) Vagueness

The vice of vagueness in a penal statute was denounced by the U.S. Supreme Court in *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983):

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations omitted.] Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." [Citation omitted.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." [Citation omitted.]

See, also, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972).

In the instant case, it is undisputed that the odometers in question had exceeded their mechanical limits. However, there were also discrepancies as to the actual mileage on the vehi-

cles. The odometer disclosure statement Carpenter received from Premier Leasing, when he purchased the 1988 Ford Taurus, indicated that the odometer read 7,460 miles. On that form, the box for certifying that the reading was not the actual mileage (**"WARNING - ODOMETER DISCREPANCY"**) was checked. However, the box for certifying that the odometer reading reflects the amount of mileage in excess of its mechanical limits was not checked. The odometer disclosure statement Carpenter received from D.L. Peterson Trust Company when he purchased the 1989 Ford Taurus was not received into evidence. However, evidence was adduced at trial that there was a discrepancy in the mileage actually driven.

In its order, the district court found that "[u]nder these circumstances, the transferor [Carpenter] violated Neb.Rev.Stat. §60-2303 by checking box number two instead of box number one," when he sold the vehicles. However, as applied to these facts, it is unclear why checking the second box violates § 60-2303, but checking the first box complies with the statute.

If Carpenter had checked only the first box, he could have been prosecuted for not checking the second box because not only were the odometers over their mechanical limits, there were also discrepancies as to their accuracy. In other words, under these facts, a transferor is caught in a Catch-22 as a result of law enforcement's unbridled discretion to determine which of two theories to pursue. This potential for arbitrary enforcement is the very ill the void-for-vagueness doctrine was designed to prevent. Where the Legislature fails to establish minimal guidelines to prevent a standardless sweep that allows police officers, prosecutors, and juries to pursue their personal predilections, the statute must fail as being unconstitutionally vague. See *Kolender v. Lawson, supra*.

Furthermore, regardless of which box Carpenter checked, or even if he had checked both boxes, he still would not have complied with the directive of § 60-2303 to "state the actual mileage to the best of [his] knowledge and belief." The odometer disclosure statement form prescribed by the Department of Motor Vehicles does not provide a space for the transferor to state the mileage that the vehicle has actually

been driven, the odometer's mechanical limit, or the extent of the odometer's discrepancy. Nonetheless, the writing at the bottom of these forms states that "This Form complies with both the State and the Federal Odometer Law."

In 1993, the Legislature amended § 60-2303 which is now found at Neb. Rev. Stat. § 60-134 (Reissue 1993). This legislation was amended after the alleged wrongs occurred in the instant case. However, we note that the statute, as amended, does not require the transferor to "state the actual mileage to the best of the transferor's knowledge and belief." Instead, under § 60-134:

> [I]f the transferor has knowledge that the mileage shown on the odometer is in excess of the designated mechanical odometer limit, [he/she] shall include a statement to that effect, or . . . if the transferor has knowledge that the odometer reading differs from the actual mileage and that the difference is greater than that caused by odometer calibration error, [he/she] shall state that the odometer reading does not reflect the actual mileage and should not be relied upon.

### (b) § 60-2303 Unconstitutionally Vague

Moreover, Carpenter was advised by a state agency to check only the first box under these circumstances. It is unreasonable to hold Carpenter accountable for determining that a violation of the law occurs by not checking the more correct of the two boxes that are provided on the form. Thus, we determine that § 60-2303 does not provide minimal guidelines to govern law enforcement and is so unclearly defined that it deprives persons of ordinary intelligence fair notice as to what conduct is prohibited. As a result, we conclude that § 60-2303 is unconstitutionally vague as applied to the facts of the instant case. Thus, Carpenter's convictions under § 60-2303 are reversed, and we will not analyze Carpenter's other assigned errors regarding that section.

### 2. COUNT III

In count III, Carpenter was charged with and convicted of violating § 60-2301. That section states in pertinent part:

> It shall be unlawful for any person to:

(1) Knowingly tamper with, adjust, alter, change, disconnect or fail to connect an odometer of a motor vehicle, or to cause any of the foregoing to occur, to reflect a mileage different than has actually been driven by such motor vehicle . . . .

Section 60-2302 must be read in conjunction with § 60-2301. Section 60-2302 states in pertinent part:

If any odometer is repaired or replaced, the reading of the repaired or replaced odometer shall be set at the reading of the odometer repaired or replaced immediately prior to repair or replacement . . . when the repaired or replaced odometer is incapable of registering the same mileage as before such repair or replacement, the repaired or replaced odometer shall be adjusted to read zero and a notice in writing on a form prescribed by the Department of Motor Vehicles shall be attached to the left door frame . . . specifying the mileage prior to repair or replacement of the odometer and the date on which it was repaired or replaced . . . .

(a) Vagueness/Overbreadth

Carpenter alleges that §§ 60-2301 and 60-2302 are unconstitutionally vague and/or overbroad as applied. We determine that providing notice that a repaired or replaced odometer is not registering the same mileage as before the repair or replacement, as required by §§ 60-2301 and 60-2302, does not reach a substantial amount of constitutionally protected conduct. As a result, Carpenter does not have standing to challenge these sections for overbreadth. See, *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994); *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985).

We further determine that if Carpenter in fact caused the odometer to be changed to reflect a mileage different than was actually driven by the 1984 Mazda RX7, without complying with § 60-2302, as he was charged, then he was engaging in conduct clearly proscribed by § 60-2301. As a result, Carpenter does not have standing to challenge §§ 60-2301 and

60-2302 for vagueness. Thus, we will analyze Carpenter's other assigned errors regarding these sections.

### (b) Mens Rea

Carpenter next alleges the district court erred in failing to find that intent to deceive is statutorily and constitutionally an essential element of §§ 60-2301 and 60-2302. Section 60-2307 states in pertinent part: "Any person who violates any other provision of sections 60-2301 to 60-2307 shall be guilty of a Class IV felony." Neb. Rev. Stat. § 28-105(1) (Reissue 1989) states that conviction of a Class IV felony is punishable by "Maximum — five years imprisonment, or ten thousand dollars fine, or both[,] Minimum — none." Carpenter argues that because of the potential for substantial criminal penalties, the court must either interpret the statutes to require intent to deceive or declare the statutes unconstitutional.

Challenging a criminal statute as having a deficient mens rea requirement is a constitutional challenge to the facial validity of the statute. Under Nebraska law, a motion to quash or a demurrer are the proper procedural methods for challenging the facial validity of a statute. *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996); *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996); *State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980). See, also, Neb. Rev. Stat. §§ 29-1808 and 29-1810 (Reissue 1995). In the instant case, Carpenter did not file a demurrer or challenge the statute as lacking a sufficient mens rea in his motion to quash. Carpenter first raised this challenge in his motion for new trial. A motion for new trial is not a proper procedural method for challenging the facial validity of a statute. *Id*. See, also, Neb. Rev. Stat. § 29-1812 (Reissue 1995). As a result, we will not consider this assigned error because it was not properly preserved for appeal.

### (c) Sufficiency of Evidence

Carpenter next alleges the district court erred in failing to find there was insufficient evidence to sustain his conviction under § 60-2301. In its order, the district court found that "Carpenter Motors, Inc. or the defendant violated Neb.Rev.Stat. §60-2301," and that "[t]he defendant, Todd C.

Carpenter, acted as either the principal or as an aider and abettor with respect to the crime."

Carpenter's argument is essentially twofold: (1) There was insufficient evidence to convict Carpenter based on the court's reasoning that he was either the principal actor or the aider and abettor with respect to the crime, and (2) there was insufficient evidence that Carpenter changed or directed the change of the odometer.

With regard to Carpenter's first argument, § 60-2301 states that it shall be unlawful for *any person* to knowingly cause an odometer of a motor vehicle to be changed to reflect a mileage different from what had actually been driven by such motor vehicle. Carpenter clearly falls into the category of "any person." The reasoning upon which the court based its guilty verdict, that Carpenter acted either as the principal or as an aider and abettor, is narrower than the statute's broad "any person" requirement. As a result, Carpenter's first argument is without merit.

Regarding Carpenter's second argument, Bell Auto Repair's order forms indicate that at the time the 1984 Mazda RX7 was delivered to them for installation of a new odometer, the indicated mileage on the old odometer was 140,685. The in-house copy of this form indicates that the mileage on the installed replacement odometer provided by Carpenter Motors was 86,238. The record reflects and the trial court found that Carpenter's signature appears on both the in-house copy and the customer copy of the repair order. Dunn testified that Carpenter sold him the car without affixing any stickers relating to the odometer reading in the car. As a result, we conclude that when viewed and construed most favorably to the State, there was sufficient evidence for the trial court to find that Carpenter knowingly caused an odometer of a motor vehicle to be changed to reflect a mileage different from what had actually been driven as prohibited by § 60-2301. See, *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994).

(d) Findings of Fact and Conclusions of Law

Finally, Carpenter alleges the district court erred in failing to make adequate findings of fact and conclusions of law. Outside the context of a hearing on a motion to suppress, a trial court sitting without a jury is not required to articulate findings of fact or conclusions of law in criminal cases. *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995). See, also, *State v. Osborn, ante* p. 57, 547 N.W.2d 139 (1996). In any event, we conclude the district court made adequate findings of fact and conclusions of law. As a result, we conclude that all of Carpenter's assigned errors as to count III are without merit.

## V. CONCLUSION

We determine that § 60-2303 is unconstitutionally vague and thus reverse Carpenter's convictions under that section. However, we determine that § 60-2301 is constitutional and that there was sufficient evidence to sustain Carpenter's conviction under that section. We therefore affirm in part, and in part reverse.

AFFIRMED IN PART, AND IN PART REVERSED.