DARLENE M. DINAN ET AL. *v.* BOARD OF ZONING
APPEALS OF THE TOWN OF STRATFORD
(14208)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and
SANTANIELLO, JS.

Argued May 1—decision released August 13, 1991

*John A. Florek,* town attorney, with whom was *Benjamin S. Proto, Jr.,* assistant town attorney, for the appellant (defendant).

*Christopher J. Smith,* for the appellees (plaintiffs).

*Dwight H. Merriam, James P. Horan* and *Philip D. Tegeler* filed a brief for the Connecticut Civil Liberties Union Foundation et al. as amici curiae.

SHEA, J. The plaintiffs, James and Darlene Dinan, appealed from a decision of the defendant board of zoning appeals of the town of Stratford (board) sustaining a cease and desist order of the zoning enforcement officer that directed them to terminate the use of their property, which is located in a single-family residence zone of Stratford, as a rooming house. The trial court sustained the appeal, holding, inter alia, that the defi-

nition of "family" in § 1.18 of the Stratford zoning regulations as "[a]ny number of individuals related by blood, marriage or adoption, living together as a single housekeeping unit" was invalid because: (1) it exceeded the authority conferred on municipalities to establish zoning districts; and (2) violated the due process and equal protection clauses of our state constitution "in that [it] discriminate[s] against individuals based on biological or legal relationships."

In its appeal from that judgment, the defendant board presents as the principal issue the propriety of the ruling that a zoning restriction limiting the use of residences in single-family zones solely to families composed of persons related by blood, marriage or adoption is not authorized by the enabling act and violates our state constitutional provisions concerning due process of law and equal protection. We conclude that, as applied in this instance to the occupancy of each floor of the plaintiffs' two-family house by a group of five unrelated persons, § 1.18 of the Stratford zoning regulations is not ultra vires of the zoning authority given to towns by the enabling act and does not offend our state constitution. We also resolve the remaining issues in favor of the board. Accordingly, we reverse the judgment and remand the case with direction to dismiss the plaintiffs' appeal.

The memorandum of decision contains no finding of subordinate facts,[1] but the statements of facts in the briefs are unchallenged and we rely upon them. The plaintiffs own a two-family house located in a single-family residence zone, which, as the board concedes, satisfies the requirements for a legal nonconforming use as a residence for two families. Each of the two

[1] The trial court announced its decision from the bench on August 9, 1990, in which it found aggrievement on the part of the plaintiffs and also stated certain conclusions. A memorandum of decision finding aggrievement and restating the court's conclusions was filed on August 10, 1990.

floors of the house is occupied by five unrelated persons, each occupant having a separate rental arrangement with the plaintiffs, who do not reside on the premises. The two floors of the building constitute separate apartments or housekeeping units within which the occupants share common cooking and bathroom facilities. There are eleven striped parking spaces on the property which are available to the ten occupants.

On January 20, 1989, the Stratford zoning enforcement officer ordered the plaintiffs to cease using their property as a rooming house rather than as a residence for two families. The plaintiffs appealed from this order to the board, claiming that the definition of "family" in § 1.18 of the zoning regulations is unauthorized by the enabling act and violates our state and federal constitutions. The board denied the appeal and upheld the zoning enforcement officer in his interpretation of the regulations.

The plaintiffs appealed from the decision of the board to the Superior Court, raising the ultra vires and constitutional issues set forth in their application to the board as well as some additional issues. The trial court sustained the appeal, declaring the definition of "family" in § 1.18 to be invalid as beyond the statutory zoning authority given to municipalities and violative of our state constitution. The court also concluded that § 4.1.4[2] of the zoning regulations, which allows "[t]he letting of rooms to not more than two persons in addition to the family of the occupant of the family dwelling unit" and "a total of not more than five per-

---

[2] "[Stratford Zoning Regulations §] 4.1.4. The letting of rooms to not more than two persons in addition to the family of the occupant of the family dwelling unit, provided that the commission, may with the approval of the health officer, grant permission for the letting of rooms without table board, to a total of not more than five persons. All dwelling units legally occupied by more than 5 but not more than 8 roomers at the time of adoption of these regulations may be continued as nonconforming uses at the same locations."

sons" as roomers "without table board" with the permission of the planning and zoning commission, was inapplicable to the property of the plaintiffs, who do not reside on the premises. On this basis the actions of the board were characterized as "arbitrary, capricious and illegal."

On the grant of certification by the Appellate Court pursuant to General Statutes § 8-8 (o), the board filed an appeal in that court, which we have transferred to this court. General Statutes § 51-199 (c); Practice Book § 4023. In addition to the principal issue of the validity of the provision of the regulation defining "family" to include only related persons, the board also challenges certain conclusions that the court may have reached, not contained in the memorandum of decision, which relate to whether the plaintiffs' property is being operated as a rooming house.

I

The trial court concluded that the definition of "family" in § 1.18 of the zoning regulations "is invalid in that it is not related to any objective established" by General Statutes § 8-2,[3] which sets forth the sub-

---

[3] General Statutes § 8-2 provides in part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, com-

jects that a zoning commission of a municipality may regulate, establishes standards for such regulations and states various objectives and concerns to be weighed in their enactment. "Under our law, a municipality, as a creation of the state, has no inherent powers of its own." *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 490, 547 A.2d 528 (1988). The power to enact a particular zoning regulation must be found in the zoning enabling statute, § 8-2. Id.

The plaintiffs do not challenge the authority of the town to establish districts or zones to be used only for single-family residences, such as the zone in which their property is located. "The . . . limitation that a residence may not be used by more than one family is not uncommon in zoning jurisprudence" and has been upheld implicitly by this court. *Planning & Zoning Commission* v. *Synanon Foundation, Inc.,* 153 Conn. 305, 308, 216 A.2d 442 (1966). Their attack upon the validity of § 1.18 is confined for the most part[4] to its restric-

bined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. Zoning regulations shall be made with reasonable consideration for their impact on agriculture. . . ."

[4] The plaintiffs also claim that § 1.18 of the Stratford zoning regulations is invalid under the enabling act because it improperly regulates the identity of the *users* rather than the *uses* of property. We agree that the iden-

tion of the term "family" to persons "related by blood, marriage or adoption," thus excluding groups of unrelated persons that may possibly function in the same manner as a traditional family of related persons so far as the community is concerned. This claim, however, is more directly related to due process concerns involving the rationality of zoning classifications than to the ultra vires question of the scope of the enabling act. If there is a reasonable basis to support the separate treatment for zoning purposes of families of related individuals as compared to groups of unrelated individuals, the broad grant of authority conferred by § 8-2 to adopt regulations "designed . . . to promote . . . the general welfare" must be deemed to sanction a zoning regulation reflecting that distinction in the uses permitted in different zoning districts.

Single-family residence districts have been justified as "manifestly in furtherance" of the zoning objective of controlling population density in residential districts. *Planning & Zoning Commission* v. *Synanon Foundation, Inc.*, supra, 310. Section 8-2 expressly authorizes regulation of "the density of population" and the adoption of provisions "designed . . . to avoid undue concentration of population." The creation of single-family residence districts is one method of achieving this objective and, therefore, is within the authority granted by § 8-2. It can hardly be disputed that some definition of the term family is appropriate and is implicitly authorized by the statute. Whether the definition of "family" in a zoning regulation can be limited to include only related persons, therefore, involves the enabling act

tity of the user is irrelevant to zoning, but user terminology may be employed to describe particular uses. A regulation permitting a hotel or retail store in a certain zone is indistinguishable from one that permits property in such a zone to be used for a hotel or retail store. The issue in this case would be no different if the regulation permitted the plaintiffs' property to be used only for such purposes and in such a manner as a traditional family of related persons would ordinarily use it.

only in the sense that the legislature must be presumed never to have intended to authorize irrational classifications wholly unrelated to zoning objectives or violative of constitutional rights. Accordingly, we conclude that the ultra vires question of whether § 1.18 exceeds the grant of authority contained in § 8-2 depends upon our resolution of the issue of the reasonableness of the distinction made between a traditional family and any other group occupying a residence, which is similar to the constitutional question of equal protection of the law.

## II

The plaintiffs limit their constitutional attack upon § 1.18 to the claim that its restriction of the term "family" to include only traditional families of related persons violates the due process clause of article first, § 8[5] and the equal protection clause of article first, § 20[6] of the Connecticut constitution. They do not invoke the parallel provisions of our federal constitution because authoritative precedent construing those provisions appears unfavorable to their position. Although the plaintiffs claim no significant difference in the text of the pertinent clauses of our state and federal constitutions, it is well established that federal precedent is not controlling when this court undertakes the interpretation of similar language in our state constitution. "Federal law, whether based upon statute or constitution, establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights." *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 57, 469 A.2d 1201 (1984). In construing

---

[5] Article first, § 8 of the Connecticut constitution provides in part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[6] Article first, § 20 of the Connecticut constitution provides in part: "No person shall be denied the equal protection of the law . . . ."

our state constitution, however, it is useful to consider the judicial gloss placed upon the corresponding language of article fourteen, § 1 of the amendments to our federal constitution, even though it is not dispositive of the issue before us.

The United States Supreme Court has considered zoning ordinances restricting the use of residences to families of related persons in two significant cases. In *Belle Terre* v. *Boraas,* 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974), the court upheld an ordinance restricting land use to single-family dwellings and defining "family" to mean only persons related by blood, marriage or adoption unless the occupants number two or less.[7] The court concluded, in the context of the application of the ordinance to prohibit the use of a house by six unrelated students at a nearby college, that the restriction of property for use by a single traditional family was a permissible exercise of the legislative line drawing function that falls within the police power. "The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." Id., 9.

In *Moore* v. *East Cleveland,* 431 U.S. 494, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977), the zoning ordinance defined "family" to include some traditional family relationships but not others. As applied to prevent a grandchild, after his mother's death, from living with his grandmother, the court invalidated the ordinance as

---

[7] The ordinance in *Belle Terre* v. *Boraas,* 416 U.S. 1, 2, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974), defined "family" to mean " '[o]ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family.' "

violating due process "by slicing deeply into the family itself." Id., 498. "Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."[8] Id., 504.

The plaintiffs rely on several decisions of courts of other jurisdictions that have interpreted their state constitutions as extending to nontraditional families the special status with respect to zoning classification given to traditional families by *Belle Terre* and *Moore* under the federal constitution. *Santa Barbara* v. *Adamson,* 27 Cal. 3d 123, 610 P.2d 436, 164 Cal. Rptr. 539 (1980) (ordinance defining "family" to include an individual, two or more persons related by blood, marriage or adoption, or a maximum of five unrelated persons, excluding servants, as applied to twelve adults, including the owner, occupying a twenty-four room, six bathroom house, violates California's constitutional provision concerning right of privacy); *Delta* v. *Dinolfo,* 419 Mich. 253, 351 N.W.2d 831 (1984) (ordinance limiting occupancy of single-family dwellings to an individual or two or more persons related by blood, marriage or adoption and not more than one other unrelated person violates due process clause of Michigan constitution as

---

[8] The special status given to traditional families, both extended and nuclear, by *Moore* v. *East Cleveland,* 431 U.S. 494, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977), raises a federal constitutional question of the validity of proposals for zoning regulations that restrict the number of occupants of a building on the basis of floor area as applied to such families. This method of controlling population density has been advocated by some courts and commentators as an alternative to zoning restrictions based on occupancy by a single traditional family. *Santa Barbara* v. *Adamson,* 27 Cal. 3d 123, 610 P.2d 436, 164 Cal. Rptr. 539 (1980); *State* v. *Baker,* 81 N.J. 99, 405 A.2d 368 (1979); see note, "Single Family Zoning: The Ramifications of State Court Rejection of *Belle Terre* on Use and Density Control," 32 Hastings L.J. 1687, 1708–1709 (1981).

applied to families consisting of husband and wife, their children and six unrelated single adults residing together in fulfillment of a religious belief); *State* v. *Baker,* 81 N.J. 99, 405 A.2d 368 (1979) (ordinance prohibiting more than four unrelated persons from sharing a single housing unit as applied to two nuclear families seeking to reside together partly for religious reasons violates rights of privacy inherent in the due process clause of the New Jersey constitution); *McMinn* v. *Oyster Bay,* 66 N.Y.2d 544, 488 N.E.2d 1240, 498 N.Y.S.2d 128 (1985) (ordinance limiting occupancy of single-family homes to persons related by blood, marriage or adoption or to two unrelated persons sixty-two years of age or older violates due process clause of New York constitution).

Not all interpretations of state constitutions, however, have taken this view. Other state courts, relying on *Belle Terre* have upheld zoning ordinances restricting single-family homes to occupancy by any number of related persons in contrast to numerical limits placed on occupancy by unrelated groups. *Rademan* v. *Denver,* 186 Colo. 250, 526 P.2d 1325 (1974) (single-family restriction upheld as applied to occupancy of dwelling by two married couples and also two unrelated persons seeking to live together as a communal family); *Association for Educational Development* v. *Hayward,* 533 S.W.2d 579 (Mo. 1976) (such an ordinance upheld as applied to exclude occupancy of single-family house by group of laymen seeking to live together as members of a religious society); *Durham* v. *White Enterprises, Inc.,* 115 N.H. 645, 348 A.2d 706 (1975) (such an ordinance upheld as constitutional when applied to renting a house by seven to ten college students on a semester basis).

"This court does not embark upon the resolution of questions involving the validity of [legislation] in the absence of a practical necessity for their determination

in the case presented and a sufficient factual background for their adjudication." *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985). In deciding the case before us, therefore, we need consider the application of the definition of "family" in § 1.18 only with respect to the constitutional rights of the plaintiffs as owners of a two-family house, each floor of which is rented to five unrelated persons who have made separate rental arrangements with the plaintiffs. A party "cannot mount a constitutional challenge to a statute on the basis of its possible applications in circumstances not presented by his own case, unless first amendment freedoms are affected, a situation not claimed to exist here." Id., 106. The plaintiffs, therefore, can assert only their own right to constitutional protection of their economic interest in maximizing the income from their property, and may not raise such interests as the ten occupants of the property may have arising possibly from some undisclosed associational bond among them. "[J]udicial power is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action." *Poe* v. *Ullman,* 367 U.S. 497, 504, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961); see *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 589, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986). "We have uniformly resisted the efforts of litigants to assert constitutional claims of others not in a direct adversarial posture before the court." *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 522, 468 A.2d 574 (1983).

In affirming the cease and desist order, the board implicitly adopted the characterization by the zoning enforcement officer of the existing use of the plaintiffs' property as a "rooming house." At the hearing before the board, the plaintiffs contended that they were not

operating a rooming house because they did not reside in the house and each floor constituted a separate housekeeping unit of five occupants, who share such common facilities as the kitchen, the bathroom and a common storage area in the cellar, but have exclusive possession of a bedroom. Our decision does not turn upon whether the cease and desist order employed the appropriate nomenclature in referring to the plaintiffs' property. The five persons who occupy one floor of the plaintiffs' two-family house may well constitute a single housekeeping unit within the meaning of § 1.18, an issue we need not decide. Nevertheless, we perceive little distinction in the impact on a neighborhood of single-family homes from the plaintiffs' use of their property and that from a rooming house, or a dwelling such as that in *Belle Terre* leased to six college students, which the United States Supreme Court regarded as sufficiently objectionable to justify its exclusion from a single-family zone. "The regimes of boarding houses . . . and the like present urban problems. More people occupy a given space; more cars rather continuously pass by; more cars are parked; noise travels with crowds." *Belle Terre* v. *Boraas,* supra, 9.

Although the record does not contain any indication that the plaintiffs use their property as a boarding house or fraternity house, their provision for eleven parking spaces available to their tenants suggests the likelihood that more cars are parked on their property than are ordinarily found on the site of a single-family or two-family house. Apart from this difference in the physical appearance of their property as compared to other homes in the neighborhood, the separate rental arrangements that the plaintiffs make with each tenant indicate a lack of cohesion within both five person groups that negates the claim that each group constitutes a *family* of five unrelated individuals. Even

though common facilities are shared, and possibly even meals, there is no indication of any tie among the plaintiffs' tenants that is likely to outlast their separate occupancies of the premises.

Traditional families are united not merely by the legal relationships among them but also by the deep affection that arises from a lifetime of sharing not just common facilities or meals in a home, but every aspect of experience. Nontraditional families may have a similar basis for their unity. Such lasting relationships are likely to generate the interest of a family not only in the home it occupies, but in the neighborhood, its schools, parks and other accouterments of urban living. The transient and separate character of residency by the plaintiffs' tenants is not as likely to stimulate on their part similar concerns about the quality of living in the neighborhood for the long term.

The municipal legislative body empowered to adopt zoning regulations in Stratford could reasonably have concluded that roomers or such occupants as the plaintiffs' tenants are less likely to develop the kind of friendly relationships with neighbors that abound in residential districts occupied by traditional families. While the plaintiffs' tenants continue to reside on the property, they are not likely to have children who would become playmates of other children living in the area. Neighbors are not so likely to call upon them to borrow a cup of sugar, provide a ride to the store, mind the family pets, water the plants or perform any of the countless services that families, both traditional and nontraditional, provide to each other as a result of long-time acquaintance and mutual self-interest. The fact that both families and individuals differ with respect to their habits and conduct in relation to the community does not render invalid the legislative judgment that the probable effect of the kind of occupancy the

plaintiffs seek to maintain would be detrimental in a neighborhood of single-family homes.

We agree with *Belle Terre* that the police power may be used constitutionally to promote "family values" and "youth values" that contribute to creating "a sanctuary for people." In authorizing municipalities to adopt zoning regulations "designed . . . to promote . . . the general welfare," § 8-2 permits the consideration of all factors relevant to the quality of living when classifying the uses to be allowed in various zones. In this instance Stratford has chosen to create a zoning district permitting "one-family dwellings" to be occupied by "[a]ny number of individuals related by blood, marriage or adoption, living together as a single housekeeping unit," but allowing also two roomers in addition to the family of the occupant or, with the necessary approval, a total of not more than five roomers. Stratford Zoning Regs. §§ 4.1.1, 1.18, 4.1.4. "A boarding or rooming house" is a permitted use in a two-family zone. Stratford Zoning Regs. § 5.1.

The restriction of the definition of "family" to related persons is an exercise in legislative line drawing that serves to provide an element of cohesion not to be found in the occupancy of the plaintiffs' property by ten individuals with separate rental agreements and no common bond of significant duration. That the line is imperfect in that it may exclude some unrelated groups that may function in the community in essentially the same manner as a traditional family, insofar as zoning objectives are concerned, does not render it invalid. "[E]very line drawn by a legislature leaves some out that might well have been included." *Belle Terre* v. *Boraas,* supra, 8. As previously noted, the plaintiffs can prevail only if their own constitutional rights as property owners are violated and cannot rely on possible applications of the regulation to other groups that may

possess characteristics relevant to zoning objectives in substantially the same degree as traditional families.

The only constitutional rights the plaintiffs can assert in this case are economic in nature and do not involve such suspect classifications as race or gender. "We deal with economic and social legislation where legislatures have historically drawn lines which we respect against the charge of violation of the Equal Protection Clause . . . ." Id. Section 1.18 is valid as applied to the plaintiffs, if there is a rational basis for excluding from a zone established for occupancy by single families a group of ten unrelated individuals with no mutual link other than their occupancy of the same dwelling under separate rental arrangements with the plaintiffs. We conclude that there are sufficient reasons relevant to the objectives of zoning set forth in § 8-2 to justify the distinction made by § 1.18 between a family of related persons and the group of ten unrelated individuals who occupy the plaintiffs' property.

## III

In addition to the issue of the validity of § 1.18 as applied to prohibit the plaintiffs' current use of their property, the board in its appeal claims that the trial court improperly concluded that § 4.1.4 of the zoning regulations was inapplicable to the plaintiffs' property. The court declared that § 4.1.4, which allows "[t]he letting of rooms to not more than two persons in addition to the family of the occupant" or, with permission of the planning and zoning commission, "to a total of not more than five persons," was not pertinent because "you don't have a family of an occupant here" and "[t]hat applies to a situation where you have a single-family house in a single-family zone and it's to allow the people who live there to have a couple of boarders." Our determination in Part I that the restriction of "family" use of a dwelling to occupancy by a traditional

family of related persons is not invalid as applied to the plaintiffs and that the ten persons presently occupying the property do not qualify as such a family makes it unnecessary to address this issue, because the plaintiffs cannot prevail in this case whether or not relief may be available through § 4.1.4.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiffs' appeal.

In this opinion the other justices concurred.