STATE OF NEBRASKA, APPELLEE, V. STEVEN M. CHAMPOUX, APPELLANT.

555 N.W.2d 69

Filed October 15, 1996.   No. A-95-958.

Peter W. Katt and Lisa K. Piscitelli, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

IRWIN, SIEVERS, and INBODY, Judges.

IRWIN, Judge.

Steven M. Champoux appeals his conviction under a Lincoln municipal ordinance. The Lincoln Municipal Code generally provides that one may rent only to families property that is zoned for single-family or two-family use. The municipal ordinance in question defines a family as including not more than three unrelated persons. On appeal, Champoux challenges the constitutionality of the ordinance's definition of "family." For the reasons stated below, we affirm.

## FACTS

On February 7, 1994, a criminal complaint was filed in the county court for Lancaster County, alleging Champoux had unlawfully allowed "more than three unrelated persons to live in a building . . . in violation of the use regulations for the R-2 Residential District." On February 16, Champoux moved to quash the complaint for the reason that "Lincoln Municipal Ordinance Section 27.03.220 is unreasonable and arbitrary in violation of the Due Process Clause of the Constitution of the State of Nebraska." This motion was overruled.

On November 17, a trial was held on stipulated facts, which are as follows: Champoux owns and maintains rental property at 1840 Hartley Street in Lincoln. On the date cited in the complaint, January 26, 1994, Champoux was renting the property at issue to five unrelated persons, all of whom lived on the property. This property is one side of a duplex and is located in an "R-2 Residential District," which is zoned for single-family or two-family use. Lincoln Mun. Code § 27.03.220 (1994) defines a family as "[o]ne or more persons immediately related by blood, marriage, or adoption and living as a single housekeeping unit in a dwelling . . . . A family may include, in addition, not more than two persons who are unrelated for the purpose of this title." At trial, Champoux preserved his constitutional challenges based on his due process rights under the Nebraska Constitution and his tenants' rights to association and privacy under the 1st and 14th Amendments to the U.S. Constitution. On November 28, Champoux was found guilty and fined $25.

In his December 22 appeal to the district court, Champoux again challenged the ordinance defining "family" based on the constitutional grounds discussed above. The district court concluded that the challenged ordinance was constitutional and affirmed the judgment of the county court. This appeal timely followed.

## ASSIGNMENTS OF ERROR

Champoux assigns that the district court erred in finding that § 27.03.220 did not violate the Due Process Clause of the Nebraska Constitution and in finding that § 27.03.220 did not

violate his tenants' rights to privacy and association guaranteed by the 1st and 14th Amendments to the U.S. Constitution.

## STANDARD OF REVIEW

The constitutionality of a statute or ordinance is a question of law. *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995); *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993). Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996); *Johnson v. Holdrege Med. Clinic*, 249 Neb. 77, 541 N.W.2d 399 (1996).

## ANALYSIS

*Jurisdiction.*

Before reaching Champoux's claims that the ordinance in question is unconstitutional, we must address whether we have jurisdiction to address his claims. Neb. Rev. Stat. § 24-1106 (Reissue 1995) provides that an appeal shall be taken to "the Court of Appeals except in capital cases, cases in which life imprisonment has been imposed, and cases involving the constitutionality of a statute." Section 24-1106 does not except from the jurisdiction of this court consideration of the constitutionality of an ordinance. See, also, Neb. Ct. R. of Prac. 9E (rev. 1996).

*Due Process Claim.*

Therefore, we turn to Champoux's claim that the zoning ordinance in question violates the Due Process Clause of the Nebraska Constitution in that it unduly restricts his use of his property. In passing upon the constitutionality of an ordinance, an appellate court begins with a presumption that the ordinance is valid; consequently, the burden is on the challenger to demonstrate the constitutional defect. *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996); *Kuchar, supra.* "The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary." *Bucholz v. City of Omaha*, 174 Neb. 862, 865-66, 120 N.W.2d 270, 273 (1963).

In a challenge to a statute or ordinance under either the Due Process Clause or the Equal Protection Clause, the degree

of judicial scrutiny to be focused on the statute is a "'dispositive question.'" *Robatham v. State*, 241 Neb. 379, 382, 488 N.W.2d 533, 538 (1992) (quoting *Dallas v. Stanglin*, 490 U.S. 19, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989)). To successfully challenge the validity of a zoning ordinance that does not affect a fundamental right or involve a suspect classification, a litigant must prove that the conditions imposed by the city in adopting the ordinance were unreasonable, discriminatory, or arbitrary and that the regulation bears no relationship to the purpose or purposes sought to be accomplished by the ordinance. See, *Robatham, supra*; *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991); *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989); *Wolf v. City of Omaha*, 177 Neb. 545, 129 N.W.2d 501 (1964). "[C]lassifications appearing in social or economic legislation require only a rational relationship between the state's legitimate interest and the means selected to accomplish that end. The ends-means fit need not be perfect; it need only be rational." *State v. Michalski*, 221 Neb. 380, 389, 377 N.W.2d 510, 517 (1985).

The interests set out by the city in support of the ordinance in question are the "sanctity of the family, quiet neighborhoods, low population, few motor vehicles, and low transiency." Brief for appellee at 17. Champoux argues that although the zoning ordinance was presumably enacted pursuant to legitimate governmental objectives, the city "has provided no evidence that the lack of a biological relationship between the inhabitants of a dwelling increases traffic, parking problems, noise, disturbances, and destroys the character of the single-family neighborhood." Reply brief for appellant at 7. As a result, he argues, the city has "failed to show that the ordinance is reasonably related to these objectives." *Id.* However, as discussed above and contrary to Champoux's arguments, Nebraska jurisprudence requires that Champoux demonstrate the constitutional defect in the zoning ordinance. See, *Conklin, supra; Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995).

The U.S. Supreme Court has addressed the constitutionality of a zoning ordinance that defined a family to include any number of related persons or a total of two unrelated persons. The Court held that the ordinance bore a rational relationship to per-

missible state objectives and, thus, was constitutional. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974). The Court reasoned:

> The regimes of boarding houses, fraternity houses, and the like present urban problems. More people occupy a given space; more cars rather continuously pass by; more cars are parked; noise travels with crowds.
>
> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one . . . . The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

416 U.S. at 9.

Nonetheless, a state may impose higher standards on the basis of state law and may guard individual rights more fervently than the U.S. Supreme Court does under the federal Constitution. *State v. Hinton*, 226 Neb. 787, 415 N.W.2d 138 (1987) (Shanahan, J., dissenting); *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986). The substantive rights provided by the federal Constitution define only a minimum, a floor rather than a ceiling. *Hinton, supra* (Shanahan, J., dissenting) (citing *Mills v. Rogers*, 457 U.S. 291, 102 S. Ct. 2442, 73 L. Ed. 2d 16 (1982)).

Therefore, we must determine whether our state Constitution provides greater due process rights than the U.S. Constitution. This is a matter of first impression in Nebraska. We have reviewed the decisions of other jurisdictions regarding constitutional challenges to zoning ordinances similar to that before us. Our review shows that other jurisdictions are split on this issue.

Jurisdictions that have upheld similar zoning ordinances under their state constitutions generally hold that such ordinances are rationally related to legitimate state interests in that they promote family and youth values and protect the State's interest in preserving the family and marriage. See, e.g., *Dinan v. Board of Zoning Appeals*, 220 Conn. 61, 595 A.2d 864 (1991) (zoning restriction limiting use of single-family residences to

related persons); *Durham v. White Enterprises, Inc.*, 115 N.H. 645, 348 A.2d 706 (1975) (ordinance restricting density of occupancy by unrelated persons while not so restricting that of related persons). See, also, *Lantos v. Zoning Hearing Bd.*, 153 Pa. Commw. 591, 621 A.2d 1208 (1993) (ordinance requiring that single-family residence not be used as student housing unless given special exception); *People v. Multari*, 135 Misc. 2d 913, 517 N.Y.S.2d 374 (1987) (ordinance defining "family" to include not more than three unrelated persons over 18 years of age); *In re Miller*, 85 Pa. Commw. 407, 482 A.2d 688 (1984) (ordinance defining "family" as any number of related persons but not more than two unrelated persons); *Rademan v. Denver*, 186 Colo. 250, 526 P.2d 1325 (1974) (ordinance restricting occupancy of single-family dwellings to related persons).

The above jurisdictions point out that the constitutional rights asserted are economic in nature. See *Dinan, supra.* In addition, these courts focus on a municipality's interests in preserving the integrity of residential districts and in fostering a sense of community. See *Rademan, supra.* In justifying the distinction drawn between related and unrelated living companions, one court stated:

> The transient and separate character of residency by the plaintiffs' tenants is not as likely to stimulate on their part similar concerns about the quality of living in the neighborhood for the long term.
>
> . . . [S]uch occupants . . . are less likely to develop the kind of friendly relationships with neighbors that abound in residential districts occupied by . . . families. . . . [T]hey are not likely to have children who would become playmates of other children living in the area. Neighbors are not so likely to call upon them to . . . perform any of the countless services that families . . . provide to each other as a result of longtime acquaintance and mutual self-interest.

*Dinan*, 220 Conn. at 74, 595 A.2d at 870.

Jurisdictions which have struck down zoning ordinances similar to that before us as violative of the rights encompassed in their state constitutions generally hold that the enactment of such ordinances assumes, without support, that unrelated per-

sons who live together behave differently than traditional families. See, e.g., *McMinn v Town of Oyster Bay*, 66 N.Y.2d 544, 488 N.E.2d 1240, 498 N.Y.S.2d 128 (1985) (ordinance defining "family" to include any number of related persons or two unrelated persons both over age of 62); *Delta Charter Twp v Dinolfo*, 419 Mich. 253, 351 N.W.2d 831 (1984) (ordinance allowing one unrelated person to reside in household in addition to family); *State v. Baker*, 81 N.J. 99, 405 A.2d 368 (1979) (ordinance allowing no more than four unrelated persons to reside together).

When striking down these ordinances, the jurisdictions reason that such ordinances are both overinclusive and underinclusive in that they prohibit a "plethora of uses" that are not contrary to the objectives of such ordinances. *Baker*, 81 N.J. at 107, 405 A.2d at 371. See, also, *Dinolfo, supra.* According to these jurisdictions, there are less restrictive alternatives available that focus on the size of the dwelling and the number of occupants rather than the relationship of the household members. See, *McMinn, supra*; *Baker, supra*.

However, even jurisdictions that have stricken down ordinances similar to that before us acknowledge that a municipality is not

> without authority to regulate the behavior it finds inimical to its concept of a residential neighborhood, including a rational limitation on the numbers of persons that may occupy a dwelling. [A municipality] need not open its residential borders to transients and others whose lifestyle is not the functional equivalent of "family" life. Nor are [municipalities] precluded from distinguishing between the biological family and a functional family when it is rational to do so . . . .

*Dinolfo*, 419 Mich. at 277-78, 351 N.W.2d at 843-44. See, also, *McMinn, supra*.

We are not persuaded that Champoux has overcome the ordinance's presumption of validity. See *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996). In enacting zoning ordinances to provide for the public health, safety, and general welfare, see Neb. Rev. Stat. § 15-902 (Reissue 1991), a municipality may consider the quality of living in its community and may

attempt to promote values important to the community as a whole. The city's objectives are certainly legitimate. Although the means and ends employed by the city may not be a perfect fit, the zoning ordinance and the city's stated objectives are rationally related. In so concluding, we adopt the reasoning of the Supreme Court in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974), and that of other jurisdictions upholding ordinances similar to that before us as discussed above.

We also note that the ordinance's definition of "family" is expansive enough to allow numerous other household relationships in addition to that of a traditional family.

> It is said, however, that if [three] unmarried people can constitute a "family," there is no reason why [four or five] may not. But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function.

*Village of Belle Terre*, 416 U.S. at 8.

For these reasons, we conclude that the zoning ordinance before us does not violate Champoux's due process rights under the Nebraska Constitution.

*Tenants' Alleged Rights to Association and Privacy.*

Champoux also assigns that the zoning ordinance violates his tenants' rights to association and privacy as provided by the 1st and 14th Amendments to the U.S. Constitution. We note that the U.S. Supreme Court has said that one may raise the denial of another's constitutional rights if as a direct consequence of the denial of these constitutional rights, the litigant faces substantial economic injury or criminal prosecution; the litigant's and the other person's interests intertwine; and the other person is unable to effectively vindicate his or her constitutional rights. We agree. See, e.g., *Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976). In any event, the issue of whether a tenant's rights to association and privacy under the U.S. Constitution are violated by zoning ordinances such as that before us has been decided by the U.S. Supreme Court. In *Village of Belle Terre*, 416 U.S. at 7, the Court held that the

ordinance before it "involves no 'fundamental' right guaranteed by the Constitution, such as voting . . . the right of associa-tion . . . the right of access to the courts . . . or any rights of privacy."

### CONCLUSION

As we conclude that the definition of "family" in the zoning ordinance before us does not violate the Due Process Clause of the Nebraska Constitution or the 1st and 14th Amendments to the U.S. Constitution, we affirm.

AFFIRMED.