STATE OF NEBRASKA, APPELLEE, V.
STEVEN M. CHAMPOUX, APPELLANT.
566 N.W.2d 763

Filed July 3, 1997.    No. S-95-958.

Peter W. Katt and Lisa K. Piscitelli, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

Lisa M. Line, of Brodkey, Cuddigan & Peebles, for amicus curiae James D. Severa, M.D.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WHITE, C.J.

Steven M. Champoux petitioned this court for further review of the Nebraska Court of Appeals' affirmance of his conviction for violating Lincoln Mun. Code § 27.03.220 (1994) by renting a residence located in an area zoned for single-family and two-family dwellings to more than three unrelated people. We affirm.

On February 7, 1994, a criminal complaint was filed in the county court for Lancaster County alleging that Champoux unlawfully "allow[ed] more than three unrelated persons to live in a building or premises . . . in violation of the use regulations for the R-2 Residential District . . . ." The R-2 Residential District is zoned for single-family and two-family dwellings. Section 27.03.220 defines a "family" as "[o]ne or more persons immediately related by blood, marriage, or adoption and living as a single housekeeping unit . . . . A family may include, in addition, not more than two persons who are unrelated . . . ."

On February 16, 1994, Champoux filed a motion to quash, arguing that § 27.03.220 was unreasonable and arbitrary, in violation of the due process clause of the Nebraska Constitution, and that § 27.03.220 violated his tenants' constitutional right of privacy. The county court overruled the motion, a trial was held on stipulated facts, and Champoux was found guilty and fined $25.

Champoux appealed to the district court for Lancaster County. The district court affirmed the county court's judgment, finding that the ordinance was neither unreasonable nor arbitrary and that the ordinance did not implicate the tenants' right of privacy.

Champoux then appealed to the Nebraska Court of Appeals, which also affirmed. See *State v. Champoux*, 5 Neb. App. 68, 555 N.W.2d 69 (1996). The Court of Appeals found that the def-

inition of "family" in § 27.03.220 did not violate the due process clause of the Nebraska Constitution, because the ordinance and the city's legitimate objectives of promoting community values and a certain quality of living were rationally related, and that Champoux did not demonstrate a constitutional defect in the zoning ordinance. The Court of Appeals also found that the ordinance did not implicate any of the tenants' fundamental constitutional rights.

Champoux timely petitioned this court for further review. On appeal, Champoux alleges that the Court of Appeals erred in (1) applying an equal protection violation standard of review when determining whether § 27.03.220 could survive Champoux's due process challenges, (2) finding that Champoux failed to demonstrate a constitutional defect in § 27.03.220, and (3) finding that § 27.03.220 did not violate Champoux's due process rights under the Nebraska Constitution.

The constitutionality of a zoning ordinance which defines "family" as any number of related persons living together as a single housekeeping unit and not more than two additional unrelated persons is an issue of first impression.

The constitutionality of a statute or an ordinance is a question of law. *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995); *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993). With regard to questions of law, an appellate court is obligated to reach a conclusion independent of the decision reached by the trial court. *Kuchar, supra*; *Village of Brady, supra*.

In his first assignment of error, Champoux alleges that the Court of Appeals erred in applying an equal protection violation standard of review when determining whether § 27.03.220 could survive Champoux's due process challenges. We disagree.

The Court of Appeals stated in its opinion that to successfully challenge the validity of a zoning ordinance that does not affect a fundamental right or a suspect classification, a litigant must prove that the conditions imposed by the city in adopting the ordinance were unreasonable, discriminatory, or arbitrary and that the regulation bears no relationship to the purpose or purposes sought to be accomplished by the ordinance. *Champoux, supra*. The Court

of Appeals also stated, " '[C]lassifications appearing in social or economic legislation require only a rational relationship between the state's legitimate interest and the means selected to accomplish that end. The ends-means fit need not be perfect; it need only be rational.' " *Id.* at 72, 555 N.W.2d at 72 (quoting *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985)).

Champoux argues that *Michalski* involved a challenge to an ordinance on equal protection grounds and that the Court of Appeals' reliance on *Michalski* in determining the type of relationship that must exist between the regulation and its purposes resulted in an improper analysis of his underlying claims. Although Champoux is correct in stating that *Michalski* involved an equal protection challenge, we have held in numerous cases involving due process challenges under the Nebraska Constitution that when a fundamental right or suspect classification is not involved in the legislation, the legislative act is a valid exercise of the police power if the act is rationally related to a legitimate state interest. *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994); *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992); *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991). The standard of review employed by the Court of Appeals was identical to the standard we have utilized in other due process challenges. Thus, we find Champoux's first assignment of error to be without merit.

In his final two assignments of error, Champoux argues that the Court of Appeals erred in finding that he failed to demonstrate a constitutional defect in § 27.03.220 and in finding that § 27.03.220 did not violate Champoux's due process rights under the Nebraska Constitution. We disagree, and because we note that these two assignments of error are interrelated, we will discuss them together.

The constitutionality of a statute or an ordinance is a question of law. *Village of Brady, supra.* When passing on the constitutionality of an ordinance, this court begins with a presumption of validity. The burden of demonstrating a constitutional defect rests with the challenger. *Village of Brady, supra; City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991).

As noted above, to successfully challenge the validity of a zoning ordinance that does not affect a fundamental right or a suspect classification, a litigant must prove that the conditions imposed by the city in adopting the ordinance were unreasonable, discriminatory, or arbitrary and that the regulation bears no relationship to the purpose or purposes sought to be accomplished by the ordinance. *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989). Under the due process clause of the Nebraska Constitution, when a fundamental right or suspect classification is not involved in the legislation, the legislative act is a valid exercise of the police power if the act is rationally related to a legitimate state interest. *Jeffrey, supra*; *Robotham, supra*; *Two IGT Video Poker Games, supra*.

The question of whether a statute which defines "family" as any number of related individuals living together as a single housekeeping unit and not more than two additional individuals who are unrelated violates the due process clause of the Nebraska Constitution is an issue of first impression. However, this same question has been addressed by both the U.S. Supreme Court and numerous other jurisdictions.

In *Village of Belle Terre v. Boraas*, 416 U.S. 1, 2, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974), the U.S. Supreme Court upheld an ordinance which defined "family" as

> "[o]ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit . . . . A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family."

The landlord in *Village of Belle Terre* rented a house to six unrelated students, and the landlord and three students sued, asking for an injunction prohibiting the enforcement of the ordinance and a declaration that the ordinance was unconstitutional and arguing that the ordinance violated multiple federal constitutional rights. The U.S. Supreme Court found that the ordinance did not affect any fundamental constitutional right and that it was a valid exercise of the police power to "lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." 416 U.S. at

9. In response to Boraas' argument that the ordinance was arbitrary, the Court stated:

> It is said, however, that if two unmarried people can constitute a "family," there is no reason why three or four may not. But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function.

416 U.S. at 8.

Other states have also addressed the issue of whether zoning ordinances similar to the one in the instant case violated their state constitutions' due process clauses. Those states that uphold such zoning ordinances do so based on the reasoning that an ordinance which defines "family" as an unlimited number of related individuals or a certain number of unrelated individuals is related to a legitimate governmental interest in controlling population density or protecting certain family values. See, *City of Brookings v. Winker*, 554 N.W.2d 827 (S.D. 1996) (finding that zoning ordinance requiring that no more than three unrelated individuals live together did not violate state constitution's due process clause because, under particular facts of case, ordinance bore real and substantial relation to town's attempt to regulate population density); *Dinan v. Board of Zoning Appeals*, 220 Conn. 61, 595 A.2d 864 (1991) (holding that zoning ordinance which excluded any group of unrelated individuals from living together as single housekeeping unit was not violative of state constitution's due process clause because city was statutorily authorized to define "family" and ordinance was rationally related to objective of controlling population density); *City of Ladue v. Horn*, 720 S.W.2d 745 (Mo. App. 1986) (finding that city ordinance limiting definition of family to only related individuals living together did not violate state constitution's due process clause because ordinance bore substantial relation to public health, morals, and welfare of city and its governmental interest in marriage and preserving integrity of biological or legal family); *Stegeman v Ann Arbor*, 213 Mich. App. 487, 540 N.W.2d 724 (1995) (finding that ordinance which prohibited more than six unrelated individuals from living together in single-family home did not violate state constitution's due process clause).

Those states which have struck down ordinances similar to the one at issue in this case have done so generally because the ordinances preclude functional families from living together. See, *Delta Charter Twp. v Dinolfo*, 419 Mich. 253, 351 N.W.2d 831 (1984) (finding that ordinance which limited occupation of single-family residences to any number of related individuals and not more than one other unrelated person violated state constitution's due process clause because it was not rationally related to governmental objectives in that ordinance precluded functional family from living together); *Borough of Glassboro v. Vallorosi*, 117 N.J. 421, 568 A.2d 888 (1990) (stating that New Jersey has repeatedly invalidated zoning ordinances intended to cure or prevent antisocial conduct in dwelling situations and stating that municipalities can appropriately deal with overcrowding or congestion by ordinance provisions that limit occupancy based on reasonable relationship to available sleeping and bathroom facilities or requiring minimum amount of habitable floor area per occupant); *Baer v Town of Brookhaven*, 73 N.Y.2d 942, 537 N.E.2d 619, 540 N.Y.S.2d 234 (1989) (finding invalid on state due process grounds ordinance which limited family to include no more than four unrelated individuals because differentiation between unrelated persons who were functionally equivalent to family and related persons was not reasonably related to legitimate zoning purpose).

In the present case, the Nebraska Legislature has given the city of Lincoln the power to pass zoning ordinances "to promote the public health, safety, and general welfare . . . with consideration having been given to the character of the various parts of the area zoned . . . ." Neb. Rev. Stat. § 15-902 (Reissue 1991). The city of Lincoln, in accordance with this statutory authority, passed a zoning ordinance which defined "family" as "[o]ne or more persons immediately related by blood, marriage, or adoption and living as a single housekeeping unit . . . . A family may include, in addition, not more than two persons who are unrelated . . . ." The city's stated reason for so limiting this definition of family is to preserve the "sanctity of the family, quiet neighborhoods, low population, few motor vehicles, and low transiency." Brief for appellee at 17.

While Champoux agrees that these are legitimate governmental objectives, Champoux argues that Lincoln's zoning

ordinance is not rationally related to those purposes. Champoux suggests that the limitation of not more than two unrelated individuals is an arbitrary limitation in that five unrelated individuals living together may make less noise, be more permanent, and create fewer parking problems than seven related individuals living together.

However, we find persuasive the decision of the U.S. Supreme Court in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974), as well as the decisions of those state courts which have upheld similar zoning ordinances in the face of due process challenges. As the U.S. Supreme Court noted:

> "When a legal distinction is determined . . . a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark."

*Village of Belle Terre*, 416 U.S. at 8 n.5 (quoting *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 41, 48 S. Ct. 423, 72 L. Ed. 770 (1928) (Holmes, J., dissenting)). In this case, the city of Lincoln enacted a zoning ordinance clearly within the ambit of its police power and defined "family" in a way that is rationally related to its legitimate objectives of preserving the sanctity of the family, quiet neighborhoods, low population, few motor vehicles, and low transiency. While Champoux posits a variety of ways in which the city of Lincoln could have chosen to effectuate its objectives, his arguments do not demonstrate any constitutional defect in § 27.03.220, and we find that he has not met his burden of demonstrating that the definition of "family" in this ordinance is not rationally related to the city's legitimate objectives. Accordingly, we find that § 27.03.220 did not violate Champoux's due process rights under the Nebraska Constitution. Therefore, we determine that Champoux's last two assignments of error are also without merit.

Because we hold that the Court of Appeals applied the correct standard of review, that Champoux did not demonstrate a constitutional defect in § 27.03.220, and that § 27.03.220 did not violate Champoux's due process rights under the Nebraska Constitution, we affirm.

AFFIRMED.

GERRARD, J., concurring.

In any challenge to a statute or ordinance under the due process clause of the Nebraska Constitution, the degree of judicial scrutiny is often dispositive of whether that statute or ordinance is upheld or struck down. See *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992) (citing *Dallas v. Stanglin*, 490 U.S. 19, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989)). Thus, while I concur in the judgment in the instant case, I write separately to address Champoux's contention that the Nebraska Court of Appeals erroneously applied the wrong level of judicial scrutiny in determining whether Lincoln Mun. Code § 27.03.220 (1994) withstands his due process challenge.

The Court of Appeals, quoting *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985), recited that " '[c]lassifications appearing in social or economic legislation require only a rational relationship between the state's legitimate interest and the means selected to accomplish that end. The ends-means fit need not be perfect; it need only be rational.' " *State v. Champoux*, 5 Neb. App. 68, 72, 555 N.W.2d 69, 72 (1996).

In *State v. Michalski, supra*, the appellant challenged the constitutionality of a recently enacted driving while under the influence (DUI) statute which provided for the permanent revocation of a driver's license for an individual with two or more prior DUI convictions. The appellant contended that the new DUI statute imposed harsher punishment upon those subject to permanent revocation who were employed than it did for those subject to permanent revocation who were not employed, because the statute failed to provide an exemption for those requiring the use of private transportation for the purposes of their employment.

We concluded that driving was not a fundamental right and that the right to possess a driver's license was an entitlement, not a property right. As such, analysis of the appellant's claim

involved the lowest level of judicial scrutiny, the rational relationship test. *Id.*

Champoux points out that *State v. Michalski, supra,* is inapposite because it involved an equal protection challenge, that is, one involving a governmental act which divided affected citizens into separate groups and treated these groups differently. Champoux's claim is one of due process, that being, that the city's zoning ordinance interferes with his right to use his property. As such, Champoux asserts that *Eckstein v. City of Lincoln,* 202 Neb. 741, 277 N.W.2d 91 (1979), holds that a higher level of judicial scrutiny is applicable when a zoning ordinance is challenged on due process grounds.

In *Eckstein v. City of Lincoln, supra,* the appellant challenged a city ordinance limiting the use of private wells within the city limits for domestic purposes to only those properties where the city's water distribution system was not available. We stated:

> The right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose, so long as it is not for the maintenance of a nuisance or injurious to others, is a privilege protected by law, and one of which a property owner may not be deprived without due process of law. The owner's right to use his property is subject, however, to reasonable regulation, restriction, and control by the state in the legitimate exercise of its police powers. *The test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner, and the peace, public health, public morality, public safety, or the general welfare of the city.* [Citation omitted.]
>
> . . . .
>
> There must be a reasonable relationship between the object the ordinance seeks to accomplish and the means by which it operates. [Citation omitted.] *There must be a clear, real, and substantial connection between the assumed purpose of the enactment and its actual provisions.*

(Emphasis supplied.) *Eckstein v. City of Lincoln,* 202 Neb. at 744, 277 N.W.2d at 93.

Thus, Champoux asserts that consistent with *Eckstein v. City of Lincoln, supra,* the appropriate "level of scrutiny" to be

employed in analyzing the Lincoln zoning ordinance at issue is not merely a rational relationship, but, instead, that there must exist a real and substantial connection between the governmental interest and the ordinance at issue. Champoux's assertion is partially correct. Although we have not required a heightened "level of scrutiny" in such instances, we have required a greater nexus between the legitimate governmental interest and the zoning regulation at issue than a mere rational relationship. See *id.*

Generally, various levels of judicial scrutiny are defined by both the identification of a governmental interest (e.g., legitimate, important, or compelling) and a statement in regard to a requisite nexus between the governmental interest and the challenged governmental action (e.g., a rational relationship, a substantial relationship, or the least restrictive means). See 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law, Substance and Procedure § 18.3 (2d ed. 1992).

With that in mind, *Eckstein v. City of Lincoln, supra*, identifies that when a zoning ordinance is claimed to effect a deprivation of an individual's property right, the first step is to identify a legitimate governmental interest. Recognizing that a citizen's private property rights are cherished under our state Constitution, we do, in *Eckstein v. City of Lincoln*, insist upon a tighter nexus between the legitimate governmental purpose and the zoning ordinance at issue than the mere rational relationship identified in *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985). Champoux is correct in asserting that we required a real and substantial connection between the legitimate governmental interest and the challenged zoning ordinance in *Eckstein v. City of Lincoln, supra.*

Notwithstanding the tighter nexus requirement, I concur in the judgment because Champoux has failed to rebut the zoning ordinance's presumption of constitutionality with respect to his alleged injury. The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary. *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995).

At the outset, it is important to recognize that Champoux is asserting a deprivation of his property right, that being, his claimed right to lease his premises to anyone he chooses. We are

not concerned with any issues regarding the right of association, privacy, or any other deprivation of right which, arguably, one of Champoux's tenants might assert on his or her own behalf.

Thus, with our focus solely on Champoux's property right, the record is devoid of any evidence that Champoux has in fact been deprived of the use of his property. Certainly, Champoux is still able to lease his premises to a "family" within the meaning of § 27.03.220. Further, Champoux has failed to prove any diminution in value of his property so as to constitute a violation of his due process rights.

However, even accepting Champoux's bare assertion that his property rights have been abridged, I nonetheless conclude that the legitimate governmental interests identified by the city bear a real and substantial connection to the zoning ordinance at issue.

In this context, it is clear that a city may designate certain areas as residential districts and limit such areas to specific uses pursuant to its police powers. See, e.g., 2 Kenneth H. Young, Anderson's American Law of Zoning § 9.24 at 186 (4th ed. 1996) ("delegation of the power to establish residential districts is not in doubt"). Thus, having the authority to designate an area as a residential neighborhood, it necessarily follows that a city then has the authority to regulate living conditions it finds inimical to its concept of a residential neighborhood. Limiting the use of residences within such districts to single-family and two-family dwellings is clearly such a living condition which the city may regulate to effect its concept of a residential neighborhood. See *id.*

However, § 27.03.220 goes one step further by defining a "family" as only those related by blood, marriage, or adoption living as a single housekeeping unit and, in addition, not more than two persons who are unrelated. The State asserts that the city's legitimate objectives furthered by this definition of family include the preservation of the "sanctity of the family, quiet neighborhoods, low population, few motor vehicles, and low transiency." Brief for appellee at 17.

Champoux claims that there is absolutely no relationship between the ordinance's limitation on the number of unrelated occupants of a dwelling and the city's legitimate objectives. I disagree.

In the instant case, Champoux had leased one side of a duplex to five unrelated, single adults. These individuals were sharing the duplex not to function as a family, but for convenience and economics over a limited period of time. A houseful of unrelated adults, unlike a typical family, leads lives separate from one another. This means separate automobiles, separate jobs, separate comings and goings, and separate friends, all with their separate automobiles. Limiting this sort of household in what the city intends to be a residential neighborhood bears a real and substantial connection to the city's objectives of quiet neighborhoods, few motor vehicles, and low transiency.

Moreover, excluding those related by blood, marriage, or adoption from this limitation bears a real and substantial connection to the city's objective of preserving the sanctity of the family. Champoux asserts that the lack of a biological or a marital relationship between residents of a dwelling does not necessarily lead to the creation of problems in a residential neighborhood or a predisposition to transiency. While this may be true in certain instances, the fact that some families and certain individuals differ with respect to their habits and conduct in relation to the community does not render invalid the overall legislative judgment on how this type of occupancy will affect family life in residential neighborhoods as a whole. As the principal opinion points out, the definition of "family" in § 27.03.220 is an exercise in legislative line drawing. This line drawing is appropriately a legislative, not a judicial, function.

I cannot say that the line drawn by the city in this case, with respect to Champoux's property right, is unreasonable, discriminatory, or arbitrary. Instead, the provisions of § 27.03.220 bear a real and substantial relationship to the public health, morality, and welfare of the city in promoting values that are important to the community as a whole and maintaining a suitable quality of living for those in the community.

For these reasons, I concur in the judgment.

CONNOLLY, STEPHAN, and McCORMACK, JJ., join in this concurrence.